1

ROBBINS LLP
BRIAN J. ROBBINS (190264)

2

brobbins@robbinsllp.com
CRAIG W. SMITH (164886)

3

csmith@robbinsllp.com
GREGORY E. DEL GAIZO (247319)

4

gdelgaizo@robbinsllp.com
5060 Shoreham Place, Suite 300

5

San Diego, CA 92122
Telephone: (619) 525-3990

6

Facsimile: (619) 525-3991

7

Attorneys for Plaintiff

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

SEAN RYAN, Individually and on
Behalf of All Others Similarly Situated,

No.

11

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

Plaintiff,

12

v.

13

FIGS, INC., HEATHER HASSON,
CATHERINE SPEAR, DANIELLA

14

TURENSHINE, J. MARTIN
WILLHITE, and JEFFREY D.

15

LAWRENCE,

16

Defendants.

17

DEMAND FOR JURY TRIAL

18

19

20

21

22

23

24

25

26

27

28

By and through the undersigned counsel, plaintiff Sean Ryan alleges the following against FIGS, Inc. ("FIGS" or the "Company") and certain of the Company's officers and directors, upon personal knowledge as to those allegations concerning plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (i) review and analysis of public filings made by FIGS with the U.S. Securities and Exchange Commission ("SEC"); (ii) review and analysis of press releases and other publications disseminated by certain defendants and other related nonparties; (iii) review of news articles, securities analyst reports, and stockholder communications; (iv) review of other publicly available information concerning defendants; and (v) information readily obtainable on the internet.  Many of the facts supporting the allegations contained herein are known only to defendants named herein or are exclusively within their custody and control.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF ACTION AND OVERVIEW**

1. Plaintiff brings this securities class action on behalf of all persons or entities that purchased or otherwise acquired: (i) FIGS securities between May 27, 2021 and May 12, 2022, inclusive (the "Class Period"); and/or (ii) FIGS stock pursuant and/or traceable to the Offering Documents (as defined herein) issued in connection with FIGS' initial public offering (the "IPO").

2. The claims asserted herein are alleged against FIGS and certain of the Company's senior officers and directors, and arise under the Securities Act of 1933 (the ("Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

3. Founded in 2013, FIGS is a direct-to-consumer healthcare apparel and lifestyle brand that primarily sells its products in the United States through the Company's digital platforms.  While FIGS is best known for its medical scrubs, it also offers other healthcare apparel such as lab coats, underscrubs, outerwear,

activewear, loungewear, compression socks, footwear, and masks.

4.  On June 1, 2021, FIGS announced the closing of its IPO.  Pursuant to the Registration Statement (as defined herein), defendants issued to the public 30,344,317 shares of Class A common stock, including the full exercise of the underwriters option to purchase an additional 3,957,954, at the price of $22 per share.  The offering consisted of 4,636,364 shares sold by FIGS and 25,707,953 shares sold by Tulco, LLC ("Tulco"), the Company's largest stockholder.

5.  All the sales were issued pursuant to the Registration Statement. Unfortunately, the Registration Statement contained untrue statements of material fact and omitted to state material facts that were required by applicable law and necessary to make the statements therein not misleading.  In particular, the Registration Statement claimed that due to the Company's access to significant customer data, it was able to maintain an efficient and steady supply chain.

6.  The truth was, however, that the Company's access to data did not allow it to mitigate supply chain problems through predictable sales.  Instead, FIGS had to increasingly rely on air freight that costs materially more than the overseas shipping it was previously reliant on.

7.  While the Registration Statement does contain a mention of air freight, this in itself is misleading.  The Registration Statement blamed the COVID-19 pandemic for the use of air freight in the time leading up to the IPO.  The truth, was, however, that FIGS was continually relying on air freight for its business.

8.  Even after the IPO, as the Company continued to rely on cost air freight, the defendants continued to claim that air freight was transitory.  For example, defendants stated that the use of air freight was at its "peak" during the fourth quarter of 2021, and that "we're pretty confident that we're going to see less airfreight overall than we're seeing it in [the fourth quarter] as we get into [2022]."

9.  On May 12, 2022, the Company announced disappointing results and slashed its expected sales, gross margin, and adjusted earnings before interest,

taxes, depreciation, and amortization ("EBITDA") because of these "supply chain" issues.  FIGS also admitted that not only did they continue to rely on air freight during the first quarter of 2022, but that "[f]or the rest of the year, we plan to significantly increase our use of airfreight to reduce our exposure to these unpredictable transit times."  On this news, the Company's stock price fell $3.21 per share, approximately 25%, to just $9.64 per share.

10.  As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's shares alleged herein, plaintiff and other Class (as defined herein) members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.  The claims asserted herein arise under and pursuant to sections 11 and 15 of the Securities Act, 15 U.S.C. §77k and §77o, and sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §78j(b) and §78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

12.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §1337, section 22 of the Securities Act, 15 U.S.C. §77v, and section 27 of the Exchange Act, 15 U.S.C. §78aa.

13.  Venue is proper in this District under 28 U.S.C. §1391(b), and section 27 of the Exchange Act, 15 U.S.C. §78aa, because FIGS' principal executive office is located in Santa Monica, California, which is situated in this District, and many of the acts giving rise to the violations complained of in this action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District.

14.  In connection with the acts alleged herein, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

# THE PARTIES

**Plaintiff**

15.     As indicated in the certification submitted herewith, plaintiff Sean Ryan purchased FIGS stock at artificially inflated prices during the Class Period and/or FIGS stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and suffered damages as a result of the violations of the securities laws alleged herein.

**Defendants**

16.     Defendant FIGS is a Delaware corporation with principal executive offices located at 2834 Colorado Avenue, Suite 100, Santa Monica, California. Defendant FIGS is a direct-to-consumer healthcare apparel and lifestyle brand which creates technically advanced apparel and products for healthcare professionals. The Company's products include scrubwear, lab coats, underscrubs, outerwear, activewear, loungewear, compressions socks, footwear, and masks. As of December 31, 2021, FIGS had 264 employees.

17.     Defendant Heather Hasson ("Hasson") has been FIGS' Co-Chief Executive Officer and a director since 2013, and also Chairperson of the Board of Directors since at least May 2021. Defendant Hasson co-founded the Company in 2013. Defendant Hasson reviewed and signed the Registration Statement.

18.     Defendant Catherine Spear ("Spear") has been FIGS' Co-Chief Executive Officer and a director since 2013. Defendant Spear co-founded the Company in 2013. Defendant Spear reviewed and signed the Registration Statement.

19.     Defendant Daniella Turenshine ("Turenshine") has been FIGS' Chief Financial Officer since December 2021. Defendant Turenshine was also FIGS' Senior Vice President of Finance and Strategy from November 2018 to December 2021.

20.     Defendant J. Martin Willhite ("Willhite") has been a FIGS director and has been since February 2019.   Defendant Willhite has also been Tulco's Vice Chairman since June 2017.   Defendant Willhite reviewed the Registration Statement and authorized defendant Spear to sign on his behalf as attorney-in-fact.

21.     Defendant Jeffrey D. Lawrence ("Lawrence") was FIGS' Chief Financial Officer from December 2020 to December 2021.   Defendant Lawrence reviewed and signed the Registration Statement.

22.     Defendants FIGS, Hasson, Spear, Willhite, and Lawrence are referred to herein as the "Exchange Act Defendants."   Defendants Hasson, Spear, Willhite, and Lawrence are referred to herein as the "Individual Exchange Act Defendants."   Defendants FIGS, Spear, Lawrence, and Turenshine are referred to herein as the "Securities Act Defendants."   Defendants Spear, Lawrence, and Turenshine are referred to herein as the "Individual Securities Act Defendants."   Defendants Hasson, Spear, Turenshine, Willhite, and Lawrence are collectively referred to herein as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of FIGS' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.   The Individual Defendants were provided copies of the Company's reports and press releases alleged in this Complaint to be misleading before, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material nonpublic information available to them, the Individual Defendants knew that the adverse facts and omissions specified in this Complaint had not been disclosed to, and were being concealed from, the public, and that positive representations and omissions which were being made were then materially false and misleading.

## MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED IN THE OFFERING DOCUMENTS

23.     On or about May 5, 2021 FIGS filed a Registration Statement on Form S-1 (the "Registration Statement") with the SEC, which would be used for the IPO following a series of amendments in response to SEC comments.

24.     On May 24, 2021, FIGS filed its final amendment to the Registration Statement, which registered FIGS Class A common stock for public sale. The SEC declared the Registration Statement effective on May 26, 2021.

25.     On May 28, 2021, FIGS filed a Prospectus on Form 424B4 (and, collectively, with the Registration Statement, the "Offering Documents"), which explained that the Company was offering 4,636,364 shares of Class A common stock and Tulco was offering an additional 21,749,999 shares of Class A common stock for $22 per share. The total amount raised in the IPO would be approximately $580.5 million, with nearly $96 million going to the Company and approximately $450 million going to Tulco, after the underwriting discount, but before expenses.

26.     On June 1, 2021, the Company completed the IPO, which, upon the underwriters' decision to exercise their option to purchase additional shares, issued and sold a total of 4.6 million shares, generating approximately $95.1 million in gross proceeds

27.     The Registration Statement contained untrue statements of material fact and omitted material facts required by governing regulations and necessary to make the statements therein made not materially misleading.

28.     The Registration Statement claimed that the Company had real-time customer data that allowed it to "reliably predict buying patterns," which in turn would lead to "operational efficiencies throughout our supply chain." In particular, the Registration Statement stated:

Our DTC [direct-to-consumer] strategy also gives us access to valuable real-time customer data that allows us to better acquire and retain

customers and reliably predict buying patterns. This leads to operational efficiencies throughout our supply chain, inventory management and new product development.

\*     \*     \*

We capture demographic, geographic and psychographic data that enables us to reliably predict buying patterns, leading to operational efficiencies throughout our supply chain, inventory management and new product development.

\*     \*     \*

Data is an essential and embedded capability throughout our organization. We have centralized Data Science and Data Engineering teams and decentralized Data Analysts working directly within each key functional area. This approach enables the harvesting and management of extensive data, the development of a suite of proprietary tools, and the direct and rapid application of data science in core operating activities and decision-making processes throughout the company.

The scale of our data is vast and growing. A rich set of hundreds of data attributes is associated with millions of customers; the customer data set is a blend of first-party, deterministic and observed behaviors along with a complementary, expanded set of enriched elements derived from data science.  In addition, we have established a unique approach to capturing and tracking precise and granular data from all stages of the order journey. These extensive data sets are used to build proprietary data science solutions applied to key functions across the company, including product, supply chain, merchandising and inventory management, marketing and customer experience.

*   *   *

*Supply Chain*

We have built a proprietary integration for our product lifecycle from purchase order to manufacturing to shipping. This deep integration enables extensive management and oversight of the product flow and also fuels a variety of prediction models (e.g., inventory planning and analytics). By combining the product lifecycle data integration with sophisticated demand predictions, we are able to continuously assess the supply chain and improve efficiency.

*   *   *

**Supply Chain**

We have built a supply chain that is optimized for our business and through which we control the design, development and fulfillment of our products.

29.    The truth was, however, that the Company's data did not provide it with the predicable ability to discern buying patterns and provide sufficient lead time on its supply.  Instead, FIGS was increasingly turning to air freight, a more costly alternative to its normal ocean shipping method, in order to meet customer needs.

30.    While the Registration Statement does mention the Company's use of air freight, this mention is itself misleading, as it blames the use of air freight on COVID-19 pandemic disruptions.  Thus, the Registration Statement makes the increased use of air freight appear as a short-term issue, not the consistent part of the business in which air freight had become.  In particular, the Registration Statement stated:

Certain of the Company's suppliers experienced delays and shutdowns due to the COVID-19 pandemic. In order to manage the impact of these disruptions and meet its customers' expectations, the Company

increased the use of more costly air freight during 2020 and during the three months ended March 31, 2021, which increased cost of goods sold. The Company has not experienced the pandemic's adverse impacts in any additional material respect.

31.   FIGS' founders had little to no experience running a public company. As a result, the Company hired defendant Lawrence on December 31, 2020, just six months before the IPO.  The Registration Statement repeatedly touted defendant Lawrence, his previous service as the Chief Financial Officer of Domino's Pizza, and his "over 25 years of experience from his prior roles driving technology and digital strategies, international expansion and overall financial success."  Defendant Lawrence was the only employee identified other than Co-Founders and Co-Chief Executive Officers, defendants Hasson and Spear.  The Registration Statement also identifies as a key risk the loss of members of the senior management team.  In particular, the Registration Statement stated:

We are dependent on our ability to continue to identify, attract, develop, integrate and retain qualified and highly skilled personnel, including senior management, designers, product managers, engineers, data scientists and logistics and supply chain personnel. In particular, we are highly dependent on the services of our co-founders and co-Chief Executive Officers, Heather Hasson and Trina Spear, who are critical to the development of our business, future vision and strategic direction. We also heavily rely on the continued service and performance of other members of our senior management team, who provide leadership, contribute to the core areas of our business and help us to efficiently execute our business. If the senior management team, including any new hires that we make, fails to work together effectively and to execute our plans and strategies on a timely basis, our business and future growth prospects could be harmed.

Additionally, the loss of any key personnel could make it more difficult to manage our operations research, development, production and marketing activities, reduce our employee retention and net revenues and impair our ability to compete. Although we have entered into employment offer letters or agreements with certain of our key personnel, these agreements have no specific duration and constitute at-will employment. We have not obtained key man life insurance policies on any of our senior management team. As a result, we would have no way to cover the financial loss if we were to lose the services of members of our senior management team.

32.    The Registration Statement misleadingly omits that defendant Lawrence was only brought on to bring the Company public and would leave FIGS soon after.

### MATERIALLY FALSE AND MISLEADING STATEMENTS DURING THE CLASS PERIOD

33.    On August 12, 2021, the Company filed its second quarter 2021 financial statements with the SEC.   The same day, FIGS held its earnings conference call with analysts and investors to discuss its results.   During the earnings call, defendant Lawrence, in response to analyst questions, claimed that the Company planned to use almost exclusive ocean freight due to FIGS' "inventory plan and capabilities."  In particular, he stated:

Yes, Brian, thanks. I'll take the second part of that first, just around airfreight. We have a very well-healed and sophisticated inventory planning capabilities. And in normal times, airfreight is something that's more of an exception to the rule because normally, you're able to plan effectively, you put it on a boat. And with the lack of variability that we've seen, you generally get it in time. You don't have to worry about it. Obviously, COVID has upended that entire system.

So going forward, on the other side of the pandemic, again, given our inventory plan and capabilities we have today, continued investments that we'll do there, this is largely going to be ocean in the out-years. I will also tell you, though, that if we get incremental demand that we didn't forecast, if we're launching an injection color that we're really excited about, those might be decisions where we at least consider airfreighting kind of on the other side of the pandemic.

34.    On September 14, 2021, FIGS issued a press release announcing that it would hold a secondary offering where Tulco and defendants Hasson and Spear would sell approximately 8.8 million shares of FIGS' Class A common stock into the market.  The sales were possible because these defendants were released early from their lock-up agreements due to the price of the Company's stock.

35.    The Company filed a Prospectus on Form 424B4 for the secondary offering on September 17, 2021 (the "Secondary Prospectus), with the SEC.  Again, the Secondary Prospectus touted the claimed operational efficiencies in FIGS' supply chain due to its use of real-time customer data.  In particular, the Secondary Prospectus claimed:

Our DTC strategy also gives us access to valuable real-time customer data that allows us to better acquire and retain customers and reliably predict buying patterns. This leads to operational efficiencies throughout our supply chain, inventory management and new product development.

\*    \*    \*

Our business is powered by a digitally native DTC strategy, which offers significant competitive advantages. Unlike most incumbent scrubs manufacturers, who sell through legacy distribution channels and do not have direct touchpoints with the end customer, we directly engage with and serve medical professionals through our digital

platform. By owning all aspects of the customer experience, including website and app design, marketing content, storytelling and post-purchase customer engagement, we deliver an elevated, personalized and seamless experience. Our DTC strategy also gives us access to valuable real-time customer data that we leverage in all aspects of our business, including apparel design and merchandising, customer acquisition and retention, demand forecasting and inventory optimization. We are able to use data to tailor the digital experience to healthcare professionals based on a number of factors, including whether that individual has purchased from us before, which products they have purchased, what size they wear, which colors they prefer and what type of healthcare professional they are. We capture demographic, geographic and psychographic data that enables us to reliably predict buying patterns, leading to operational efficiencies throughout our supply chain, inventory management and new product development.

*   *   *

***Supply Chain***

We have built a proprietary integration for our product lifecycle from purchase order to manufacturing to shipping. This deep integration enables extensive management and oversight of the product flow and also fuels a variety of prediction models (e.g., inventory planning and analytics). By combining the product lifecycle data integration with sophisticated demand predictions, we are able to continuously assess the supply chain and improve efficiency.

36.     Again, the Secondary Prospectus blamed the use of air freight on the COVID-19 pandemic and limited it to the increased use in 2020, not mentioning that FIGS continued to use air freight for a material amount of its supply chain in 2021, and likely going forward.  In particular, the Secondary Prospectus stated:

> In response to public health directives and orders and to help minimize the risk of the virus to employees, the Company has taken precautionary measures, including implementing work from home policies for certain employees. The COVID-19 pandemic has the potential to significantly impact the Company's manufacturing supply chain, distribution, logistics and other services. Certain of the Company's suppliers experienced delays and shut-downs due to the COVID-19 pandemic. In order to manage the impact of these disruptions and meet its customers' expectations, the Company increased the use of more costly air freight during 2020, which increased cost of goods sold. The Company has not experienced the pandemic's adverse impacts in any additional material respect.

37.     The Secondary Prospectus further downplayed the materiality of the air freight, claiming only that FIGS may "from time to time" need to use it.

38.     On September 20, 2021, defendants Hasson and Spear sold 3,888,322 shares of FIGS stock at a price of $40.25 per share for proceeds of $156,504,960.50.

39.     On November 10, 2021, the Company filed its third quarter 2021 financial statements with the SEC and participated in its subsequent earnings conference call with analysts and investors.  During the earnings call, defendant Spear stated that FIGS would always "have a steady supply of products that health care professionals come back all year round to replenish."

40.     In response to a question of how the Company was planning to address any holiday season supply chain issues, defendant Spear also stated:

> Okay. So from a supply chain perspective, we're in a really strong position because we have 3 structural advantages: number one, we're a uniform company, which means that our customers need our products in order to do their jobs, so demand is predictable. We have a nonseasonal business and we have a replenishment-driven business.

This gives us an incredible amount of visibility into the products we need to make when we need to make them and the quantities in which to make them in. So in turn, that allows us to lock in costing and capacity and bring in goods farther in advance.

Second, we have a highly consistent fabrication and style profile. As we've discussed, more than 90% of our product is made with the same fabrication, FIONx, and more than 80% of our volume comes from 13 core scrubwear styles. What does that do? It results in a very consistent high volume, low SKU count production, which makes us essentially a supplier's dream.

Third, we're a direct-to-consumer company. Because of that, we're able to forecast even more accurately and farther in advance because we have a direct relationship with our 1.7 million customers. And we have all this data that helps us to know what product they need and when they need it. This allows us to provide 12- to 18-month rolling forecasts to our suppliers, and it also means we could adjust our calendar and our launch schedule, if there is any delay. We're not waiting on a PO from a wholesaler that, then, we have to get from our supply chain.

All these structural advantages allow us to be highly efficient from a production and supply chain standpoint and allow us to weather any macro challenges much better than other companies.

41.     On the same earnings call, defendant Lawrence downplayed that FIGS was becoming more dependent on air freight.  In particular, he falsely mitigated cost concerns to investors by stating "we're pretty confident that we're going to see

less airfreight overall than we're seeing it in [the fourth quarter] as we get into [2022]."

42.     On December, 10, 2021, the Company announced defendant Lawrence's retirement.  FIGS' stock price fell 21% on this news on unusually heavy trading.

43.     During FIGS' presentation at the ICR Conference held on January 10, 2022, defendant Spear reiterated that the Company's dependency on air freight was a thing of the past.  Specifically, she stated:

> I think in terms of the business, from a supply chain perspective, we
> saw in the fourth quarter we utilized airfreight to get our goods in, and
> we're happy that we did that. We met the demand, right? And we were
> able to get our products in to meet the demand and get them to our
> health care professionals. Going forward -- and we really do view that
> as the peak. And so we've moved a lot of the shipments to ocean freight.
> We have seen rates be a bit elevated or continue to be a little bit elevated
> on that front. But going forward, we're excited to utilize more ocean
> and really continue to navigate and be best-in-class as it relates to
> operational excellence and supply chain excellence.

44.     These claims were subsequently echoed by FIGS' Chief Financial Officer, Daniella Turenshine ("Turenshine"), who not only provided a 70% plus gross margin target for 2022, but who also stated during the same conference:

> But what I can tell you is that we really do see Q4 as a peak in terms of
> air freight spend. And for the full year 2022, we do not anticipate
> needing to use the same level of airfreight that we did in the prior year.
>
> *     *     *
>
> [S]o we are reducing the amount of air freight that we're using, and this
> is also because we put strategies in place in Q4 to be able to do that,
> right? We increased lead times to accommodate longer ocean transit

times, and we began to hold more weeks of supply of our seasonless core product that we're really uniquely able to do as a uniform business. So that said, continuing to navigate macro supply chain issues, just like the rest of the companies in our industry.

So for example, as Trina mentioned, we're expecting to see kind of continued elevated ocean freight rates, like we saw in the back half of 2021, continue to permeate into 2022. So expecting that to offset some of the benefits that we're seeing from reductions in air freight. But even with all this uncertainty, we're supremely confident in our ability to maintain that 70%-plus gross margin target.

45.     On March 8, 2022, the Company issued a press release announcing its much anticipated fourth quarter and full year 2021 financial results and held a subsequent earnings conference call.  During the earnings call, defendants Spear and Hasson and Turenshine praised FIGS' performance touting its delivery of "an exceptional combination of revenue growth, profitability, and free cash flow."

46.     Similar to previous earnings calls, defendant Spear stated that, among other things, the success of FIGS was due to its "unique business model [which] has several key differentiators that enabled us to better withstand the macro supply chain challenges."

47.     In addition to the above statements, during the same earnings call, Turenshine provided stockholders with a promising 2022 financial outlook. Turenshine claimed that FIGS' "strategic road map" included expected revenues of approximately $550 million to $560 million, an adjusted EBITDA margin of 20%+, and a gross margin of 70%+.

48.     The above statements were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business operations and prospects.  Specifically, defendants: (i) inflated the Company's true ability to

successfully secure repeat customers; (ii) failed to disclose the Company's increasing dependence on air freight; (iii) inflated the expected net revenues, gross margin, and adjusted EBITDA margin for 2022; and (iv) that, as a result, of the foregoing, defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## **THE TRUTH IS REVEALED**

49.    On May 12, 2022, FIGS issued a press release announcing its first quarter 2022 financial results as well as an update to the full year outlook for 2022. Not only did expected 2022 net revenues drop to a range of $510 million to $530 million compared to the previous outlook of $550 million to $560 million, expected gross margin decreased to a range of 67% to 68% compared to the previous outlook of 70%+ as well as a drop in its adjusted gross EBITDA margin to a range of 16% to 18% in comparison to its original estimate of 20%+.

50.    The decrease in expected gross margin was "primarily due to a significant increase in the Company's use of air freight to help mitigate supply chain challenges."  Notably, FIGS' gross margin for the first quarter of 2022 was reportedly 71.2%, representing a forty basis-point decrease year-over-year.  The Company also attributed this drop to higher air freight spend and increased ocean and air freight rates despite previously assuring stockholders that FIGS' dependence on air freight had "peak[ed]" in the fourth quarter of 2021.

51.    On this news, shares of FIGS stock dropped nearly 25% from a close of $12.85 per share on May 12, 2022 to $9.64 per share on May 13, 2022.

## **LOSS CAUSATION**

52.    During the Class Period, as detailed herein, defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of FIGS common stock and operated as a fraud or deceit on the Class.  Later, when the truth concealed by defendants' prior misrepresentations and omissions was disclosed to the market,

including after the close of the market on May 12, 2022, the price of FIGS stock fell precipitously.  As a result of the defendants' material misstatements and omissions—plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired FIGS common stock during the Class Period.  Excluded from the Class are defendants and their families, directors, and officers of FIGS and their families and affiliates.

54.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims as a class action will provide substantial benefits to the parties and the Court.  As of July 31, 2022, FIGS had tens of millions of shares and approximately 158.8 million shares of common stock outstanding, owned by hundreds or thousands of investors.

55.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    whether defendants violated federal securities laws;

(b)    whether the Offering Documents and Secondary Prospectus were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein

(c)    whether defendants omitted and/or misrepresented material facts;

(d)    whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)    whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(f)    whether defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(g)    whether defendants' conduct impacted the price of FIGS common stock;

(h)    whether defendants' conduct caused the members of the Class to sustain damages; and

(i)    the extent of damages sustained by Class members and the appropriate measure of damages.

56.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

57.    Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

58.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

59.    FIGS' "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

60.    Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of FIGS who knew that the statement was false.   None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection, or

statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made, nor were any of the projections or forecasts made by defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

61.    At all relevant times, the market for FIGS common stock was an efficient market for the following reasons, among others:

(a)    FIGS common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    FIGS filed periodic public reports with the SEC and the NYSE;

(c)    FIGS regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    FIGS was followed by several securities analysts employed by numerous major brokerage firms, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

62.    As a result of the foregoing, the market for FIGS common stock promptly digested current information regarding FIGS from all publicly available sources and reflected such information in the price of FIGS shares.  Under these circumstances, all purchasers of FIGS common stock during the Class Period suffered similar injury through their purchase of FIGS shares at artificially inflated prices and the presumption of reliance applies.

63.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United*

*States*, 406 U.S. 128 (1972), because the Class' claims are grounded on defendants' material omissions.  Because this action involves defendants' failure to disclose the true, material, negative financial impact facing the Company, as well as FIGS' true increasing reliance on air freight and its effect on meeting customer demand— information that defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the sustainability of FIGS' financial results and growth and the Company's inventory levels, and the impact that could have on the Company's near-term and long-term financial condition, that requirement is satisfied here.

## COUNT I

**(For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

64.    Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

65.    During the Class Period, the Exchange Act Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase FIGS common stock at artificially inflated prices.

66.    The Exchange Act Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for FIGS shares in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder.

67.     The Exchange Act Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

68.     During the Class Period, the Exchange Act Defendants made the false statements specified above, which they knew to be or recklessly disregarded the truth that they were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.     The Exchange Act Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  The Exchange Act Defendants engaged in this misconduct to conceal FIGS' true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

70.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for FIGS shares of common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for FIGS common stock had been artificially inflated by defendants' fraudulent course of conduct.

71.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's shares during the Class Period.

72.     By virtue of the foregoing, defendants violated section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

## COUNT II

**(For Violation of Section 20(a) of the Exchange Act
Against the Individual Exchange Act Defendants)**

73.   Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

74.   The Individual Exchange Act Defendants acted as controlling persons of FIGS within the meaning of section 20(a) of the Exchange Act, 15 U.S.C. §78t(a).  By virtue of their high-level positions, participation in and awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and intimate knowledge of the Company's actual performance, and their power to control public statements about FIGS, the Individual Exchange Act Defendants had the power and ability to control the actions of FIGS and its employees.  By reason of this conduct, the Individual Exchange Act Defendants are liable under Section 20(a) of the Exchange Act.

## COUNT III

**(For Violation of Section 11 of the Securities Act Against the
Securities Act Defendants)**

75.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76.   This Count is brought pursuant to section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

77.   The Offering Documents contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

78.   The Securities Act Defendants are strictly liable to plaintiff and members of the Class for the misstatements and omissions.

79.   None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the

Offering Documents were true and without omissions of any material facts and were not misleading.

80. By reason of the conduct herein alleged, each Securities Act Defendant violated or controlled a person who violated section 11 of the Securities Act.

81. Plaintiff acquired FIGS common stock issued pursuant to the Offering Documents.

82. Plaintiff and members of the Class have sustained damages. The value of FIGS common stock has declined substantially subsequent to and due to defendants' violations.

83. At the time of their purchases of FIGS common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

## COUNT IV

### (For Violation of Section 15 of the Securities Act Against the Individual Securities Act Defendants)

84. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

85. This Count is brought pursuant to section 15 of the Securities Act, 15 U.S.C. §77o, against the Individual Securities Act Defendants.

86. The Individual Securities Act Defendants were controlling persons of FIGS by virtue of their positions as directors or senior officers of FIGS. The Individual Securities Act Defendants each had a series of direct and indirect

business and personal relationships with other directors and officers and major stockholders of FIGS.

87.    The Individual Securities Act Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from plaintiff and the Class.

88.    By virtue of the conduct alleged herein, the Individual Securities Act Defendants are liable for the aforesaid wrongful conduct and are liable to plaintiff and the Class for damages suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of plaintiff and other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: November 1, 2022

ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
GREGORY E. DEL GAIZO

/s/ *Gregory E. Del Gaizo*
GREGORY E. DEL GAIZO

5060 Shoreham Place, Suite 300
San Diego, CA 92122

Telephone: (619) 525-3990
Facsimile (619) 525-3991
E-mail: brobbins@robbinsllp.com
        csmith@robbinsllp.com
        gdelgaizo@robbinsllp.com

**Attorneys for Plaintiff**

1589944

## CERTIFICATION OF PLAINTIFF
## <u>PURSUANT TO FEDERAL SECURITIES LAW</u>

Sean Ryan ("Plaintiff") declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1.      Plaintiff has reviewed the Class Action Complaint and has retained Robbins LLP as counsel in this action for all purposes, and authorized the filing of the Complaint.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| SECURITY | TRANSACTION (Purchase/Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| | See Attachment | | | |
| | | | | |
| | | | | |
| | | | | |

4.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

5.      Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

_____

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

7.      Plaintiff represents and warrants that he is fully authorized to enter into and execute this certification.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _____ day of ____October_____, 2022.

DocuSigned by:

1532C1D9584548C...

SEAN RYAN

28

| SECURITY | TRANSACTION (Purchase/Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| FIGS | Purchase | 25 | 8/20/21 | 37.585 |
| FIGS | Purchase | 25 | 9/20/21 | 39.0361 |
| FIGS | Purchase | 10 | 5/10/22 | 12.825 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |