PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
WINSTON P. HSIAO (SBN 273638)
winston.hsiao@skadden.com
DANIELLE DANKNER (SBN 323556)
danielle.dankner@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendants
Tulco, LLC and Thomas J. Tull

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN RYAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIGS, INC. et al.,<br><br>Defendants. | CASE NO.: 2:22-CV-07939-ODW(AGRx)<br><br>**DEFENDANTS TULCO, LLC AND THOMAS J. TULL'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Judge: Hon. Otis D. Wright, II<br>Courtroom: 5D<br>Date: August 28, 2023<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

    I.     INTRODUCTION ........................................................................................ 1

    II.    PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL ................................ 2

          A.     Section 10(b) and Section 20A ...................................................... 2

                1.     Plaintiffs Fail To Plead Tulco and Tull Possessed MNPI ... 2

                2.     Plaintiffs Fail To Plead an Inference of Scienter ................ 3

          B.     Section 20(a) Control Person Liability ........................................... 5

    III.   PLAINTIFFS' SECURITIES ACT CLAIMS FAIL ............................... 7

          A.     Section 11 and Section 12 .............................................................. 7

                1.     Tulco and Tull Are Not Liable Persons Under Either Statute ................................................................................... 8

                2.     Plaintiffs Do Not Have Statutory Standing Concerning the SPO ................................................................................. 9

          B.     Section 15 ...................................................................................... 10

CERTIFICATE OF COMPLIANCE ......................................................................... 11

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re American Apparel, Inc. Shareholder Litigation*,
   No. CV 10-06352 MMM (RCx),
   2013 WL 10914316 (C.D. Cal. Aug. 8, 2013) ...................................................... 7

*In re Autodesk, Inc. Securities Litigation*,
   132 F.Supp.2d 833 (N.D. Cal. 2000) ................................................................. 1

*Batwin v. Occam Networks, Inc.*,
   No. CV 07–2750 CAS (SHx),
   2008 WL 2676364 (C.D. Cal. July 1, 2008) ...................................................... 8

*Brasher v. Broadwind Energy, Inc.*,
   No. 11 CV 991,
   2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...................................................... 6

*In re Century Aluminum Co. Securities Litigation*,
   729 F.3d 1104 (9th Cir. 2013) ............................................................................ 9

*In re Charles Schwab Corp. Securities Litigation*,
   257 F.R.D. 534 (N.D. Cal. 2009) ....................................................................... 9

*Cheng v. Canada Goose Holdings Inc.*,
   No. No. 11 CV 991,
   2021 WL 3077469 (S.D.N.Y. July 19, 2021) ..................................................... 4

*Dartley v. ErgoBilt Inc.*,
   No. CIV. A. 398CV1442M,
   2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ..................................................... 7

*In re DraftKings Inc.*,
   21 Civ. 5739 (PAE),
   2023 WL 145591 (S.D.N.Y. Jan. 10, 2023) ........................................................ 4

*In re Envision Healthcare Corp. Securities Litigation*,
   No. 3:17-cv-01112,
   2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) ...................................... 1, 3, 4, 7

*Flood v. Miller*,
   35 F.App'x 701 (9th Cir. 2002) ....................................................................... 5, 6

*Flynn v. Sientra, Inc.*,
    No.: CV 15-07548 SJO (RAOx),
    2016 WL 3360676 (C.D. Cal. June 9, 2016) ................................................................. 9

*In re Intrabiotics Pharmaceuticals, Inc. Securities Litigation*,
    No. C 04-02675 JSW,
    2006 WL 708594 (N.D. Cal. Jan. 23, 2006) ............................................................. 4, 5

*Jedrzejczyk v. Skillz Inc.*,
    No. 21-cv-03450-RS,
    2022 WL 2441563 (N.D. Cal. July 5, 2022) ............................................................... 9

*Maine State Retirement System v. Countrywide Financial Corp.*,
    No. 2:10–CV–0302 MRP (MANx),
    2011 WL 4389689 (C.D. Cal. May 5, 2021) ............................................................... 2

*Mediamath, Inc. v. Math Venture Partners Management, LLC*,
    No. 91243964,
    2020 WL 7074698 (T.T.A.B. Nov. 18, 2020) ......................................................... 3, 4

*Mehedi v. View, Inc.*,
    No. 21-cv-06374-BLF,
    2023 WL 3592098 (N.D. Cal. May 22, 2023) ............................................................. 9

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................................... 5

*In re Musicmaker.com Securities Litigation*,
    No. CV00-2018 CAS(MANX),
    2001 WL 34062431 (C.D. Cal. June 4, 2001) ............................................................. 6

*Obasi Investment LTD v. Tibet Pharmaceuticals, Inc.*,
    931 F.3d 179 (3d Cir. 2019) ......................................................................................... 2

*In re OPUS360 Corp. Securities Litigation*,
    No. 01Civ.2938(JGK)(JCF),
    2002 WL 31190157 (S.D.N.Y. Oct. 2, 2002) .............................................................. 8

*Paciga v. Invuity Inc.*,
    No. C 17-01005 JSW,
    2018 WL 7286503 (N.D. Cal. Sept. 26, 2018) ............................................................ 4

*In re Peregrine Systems, Inc. Securities Litigation*,
    N. 02CV870-BEN (RBB),
    2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .......................................................................... 3

*Petrie v. Electronic Game Card Inc.*,
    No. SACV 10-00252 DOC (RNBx),
    2011 WL 13131246 (C.D. Cal. May 26, 2011) ..................................................................... 3

*Plymouth County Retirement Ass'n v. Array Technologies, Inc.*,
    21 Civ. 4390 (VM),
    2023 WL 3569068 (S.D.N.Y. May 19, 2023) ....................................................................... 5

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2017) ............................................................................................... 3

*In re Prestige Brands Holding, Inc.*,
    No. 05 CV. 06924(CLB),
    2006 WL 2147719 (S.D.N.Y. July 10, 2006) .................................................................. 1, 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
    348 F.Supp.3d 821 (N.D. Ind. 2018) ..................................................................................... 3

*Short v. Dondanville*,
    ED CV11-00615 JAK (PLAx),
    2012 WL 12888360 (C.D. Cal. Oct. 5, 2012) ...................................................................... 6

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F.Supp.3d 1029 (N.D. Cal. 2016) ................................................................................ 10

*Vicari v. Voyager Financial Group, LLC*,
    CV 13-671 ABC (RZx),
    2013 WL 12136519 (C.D. Cal. Sept. 17, 2013) ................................................................... 5

*Vignola v. FAT Brands, Inc.*,
    No. CV 18-7469 PSG (PLAx),
    2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) ..................................................................... 9

*Welgus v. TriNet Group, Inc.*,
    No. 15-cv-03625-BLF,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ............................................................ 2, 6, 7, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................................. 5

I. **INTRODUCTION**

The Opposition does not resuscitate Plaintiffs' fatally flawed complaint against FIGS, much less show why securities liability should extend to Tulco or Tull, neither of which Plaintiffs allege participated in the making of any allegedly false statement. Rather, the Opposition suggests Tulco and Tull should be exposed to liability; not because either actually possessed and traded on any material non-public information ("MNPI") or otherwise controlled the day-to-day affairs of FIGS, but simply because Tulco and Tull are venture capitalists, made an early investment in FIGS, and realized a partial gain in the IPO and SPO. Successful investments do not serve as the basis for securities law violations. If Plaintiffs' theories were correct (and they are not), every venture capital firm would be exposed to securities law liability simply for taking actions that every such firm takes—taking calculated investment risks in hopes of enjoying a later benefit from such risk. For the reasons below, each of Plaintiffs' claims fail.

**Exchange Act Insider Trading Claims.** Plaintiffs' insider trading claims fail because the Complaint does not allege Tulco or Tull had MNPI concerning FIGS' operations at the time of Tulco's trades. Plaintiffs argue they must have had MNPI because Tulco describes itself as having "hands-on" involvement in its portfolio companies. (Opp. 29.) Such allegations are insufficient "because [otherwise] that would eliminate the necessity for specially pleading scienter." *In re Autodesk, Inc. Sec. Litig.*, 132 F.Supp.2d 833, 844 (N.D. Cal. 2000).

The Opposition further argues that Tulco must have acted with scienter because its trades resulted in significant gain. Even significant sales by early investors in public offerings are presumed to *not* be fraudulent because "[e]arly investors [] routinely sell stock in [public offerings]," to make good on their investment. *In re Prestige Brands Holding, Inc.*, 2006 WL 2147719, at *7 (S.D.N.Y. July 10, 2006); *In re Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254, at *26 (M.D. Tenn. Nov. 19, 2019) (private equity firm selling 100% holdings in offering for *$4 billion* not suspicious because its "sole purpose is to invest in companies and ultimately sell them"); (Mot. 8-12). Plaintiffs ignore this law.

1

**Securities Act Section 11 and 12 Claims**. Plaintiffs argue Tulco is directly liable for FIGS' registration statements as a "partner" under Section 11 and "statutory seller" under Section 12, because Tulco has a "hands-on" approach and a seat on FIGS' board. (Opp. 54-57.) Wrong again. Those statutes exhaustively enumerate who may be potentially liable and are interpreted "narrowly." *Obasi Inv. LTD v. Tibet Pharms., Inc.*, 931 F.3d 179, 182 (3d Cir. 2019); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *10 (C.D. Cal. May 5, 2021). Plaintiffs provide no authority to essentially write "venture capitalists" into Section 11 and 12. Rather, courts hold investing firms like Tulco (or their founders like Tull) are not subject to liability under these statutes. (Mot. 16-19; III.A.)

**Control Person Liability**. Plaintiffs argue Tulco and Tull are control persons because Tulco has significant ownership interest, board seats, and right to veto certain high-level actions. (Opp. 60-64.) Such allegations are "insufficient" as they do not indicate the investor actually exercised control over the "company's day-to-day oversight." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *13 (N.D. Cal. Jan. 17, 2017); (Mot. 13-16); (II.B.) The Complaint lacks these requisite allegations. Plaintiffs' reliance on facts typical of all investor firms is insufficient.

## II. PLAINTIFFS' EXCHANGE ACT CLAIMS FAIL

### A. Section 10(b) and Section 20A

Plaintiffs' Section 20A claim and Section 10(b) and Rule 10b-5 scheme liability claims based on insider trading fail because: (i) Plaintiffs fail to plead Tulco and Tull possessed MNPI when Tulco traded (Mot. 7); and (ii) Tulco's trades do not create an inference of scienter (*id.* 8-12). (Opp. 44 n.11.)

#### 1. Plaintiffs Fail To Plead Tulco and Tull Possessed MNPI

The Complaint fails to show that any MNPI concerning FIGS' operations existed at the time of the offerings, as shown in FIGS' briefs. This alone dooms Plaintiffs' claim against Tulco and Tull. Even if MNPI existed, the Complaint is devoid of specific allegations Tulco or Tull possessed such information: no document, report or fact in their possession related to the MNPI at issue. This failure too is fatal. (Mot. 7.)

The Opposition's only response is that Tulco's website generically states Tulco takes a "hands-on" approach to its investments, "partners with," and "works alongside management." (Opp. 29.) From there, Plaintiffs incredibly argue that such generic statements—which do not even reference FIGS—must mean Tulco possessed MNPI concerning not only FIGS, but the particular MNPI at issue. Plaintiffs provide no authority for this leap in logic because "[t]he Ninth Circuit…'has rejected these kinds of "he-must-have-known" allegations'" based on an alleged "hands-on" relationship with a company. *Petrie v. Elec. Game Card Inc.*, 2011 WL 13131246, at *4 (C.D. Cal. May 26, 2011). Plaintiffs must plead more than "potential" access to insider information. *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F.Supp.3d 821, 849 (N.D. Ind. 2018) (plaintiff "alleged nothing more than that the Private Equity Defendants had *potential* access to insider information" by virtue of their alleged control); *In re Envision*, 2019 WL 6168254, at *30. If Plaintiffs' argument was correct, courts would find that every venture capital firm possesses inside information based solely on the fact such firm made an investment, absent any allegation that the firm actually possessed inside information. *Mediamath, Inc. v. Math Venture Partners Mgmt., LLC*, 2020 WL 7074698, at *10 (T.T.A.B. Nov. 18, 2020) (venture capital firms "provide both equity capital and active management experience"). That is not the law.[1]

### 2. Plaintiffs Fail To Plead an Inference of Scienter

To attempt to show scienter, the Opposition points to allegations that Tulco sold shares for $560 and $250 million in the IPO and SPO, respectively. (Opp. 23, 25.) But it is well settled that even substantial stock sales do not "raise an inference of scienter, let alone a strong inference," and only suffice to plead scienter if they are suspicious. *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063-64 (9th Cir. 2017); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *64 (S.D. Cal. Mar. 30, 2005) ($900 million sales insufficient). Plaintiffs agree courts must consider: (i) amount

---

[1] Plaintiffs' "core operations" theory, premised on Tulco's alleged "hands-on" approach (Opp. 33), fails for the same and additional reasons. (Mot. 11-12; FIGS' Reply 15-16.)

and percentage of shares sold; (ii) timing of sales; and (iii) whether sales were consistent with insider's prior trading history. (Opp. 23.)

Tulco's trades cannot be suspicious. **First**, Plaintiffs make much of the allegation that in 2017, Tulco "cheaply acquired" its shares from prior FIGS investors and then four years later sold them for gain. (Opp. 25.) Tellingly, Plaintiffs do not cite authority that making a successful investment shows scienter. Again, even large sales in public offerings are presumptively ***not fraudulent***. (Mot. 8-10); *In re DraftKings Inc.*, 2023 WL 145591, at *35 (S.D.N.Y. Jan. 10, 2023) ($1 billion sales not suspicious because "sales were in connection with public offerings" which "cuts against an inference of scienter because it suggests a motive that is 'generally possessed'"); *Cheng v. Canada Goose Holdings Inc.*, 2021 WL 3077469, at *11 (S.D.N.Y. July 19, 2021) (same, roughly $600 million). If Plaintiffs were correct, every investor making a successful investment could have scienter, including all venture capital firms like Tulco which routinely invest in companies like FIGS. *In re Envision*, 2019 WL 6168254, at *26; *Mediamath, Inc.*, 2020 WL 7074698, at *10 ("venture capitalist buys a stake in an entrepreneur's idea" "with high growth potential," "nurtures it for a short period of time and then exits"). The Opposition ignores this law, and does not cite a single case where an early investor's sales in public offerings establish scienter.

**Second**, Tulco only sold 28% and 10% of its holdings in the IPO and SPO, further negating any inference of scienter. (Mot. 11.) The Opposition does not dispute the Ninth Circuit requires greater percentages of shares sold to state a claim. Instead, Plaintiffs again argue the dollar amount of Tulco's proceeds overshadows consideration of percentages. (Opp. 23.) This fails for the same reasons above and in FIGS' Reply (at 14).

**Finally**, Plaintiffs do not dispute Tull and his related entities ***purchased*** $7 million in FIGS shares during the Class Period, further negating scienter. (Mot. 11.) An entity engaging in fraud would take advantage by ***selling***, not ***buying***, securities at artificially inflated prices. *Paciga v. Invuity Inc.*, 2018 WL 7286503, at *6 (N.D. Cal. Sept. 26, 2018); *In re Intrabiotics Pharms., Inc. Sec. Litig.*, 2006 WL 708594, at *13 (N.D. Cal. Jan. 23,

4

2006). In response, Plaintiffs assert the Court should ignore this dispositive argument solely because Plaintiffs strategically elected not to plead Tull's trading history. (Opp. 24.) But courts regularly consider defendants' trading history in evaluating scienter even when not pled. (Mot. 11; FIGS' Reply 14.) Plaintiffs did not oppose Defendants' Request for Judicial Notice of Tull's trading history.

Plaintiffs' scienter allegations are even weaker when the Court considers plausible counter inferences, as it must in securities cases. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (dismissing insider trading claim after considering "opposing inferences to be drawn from [] pattern of trading"). Here, Tulco's trades are routine and thus "the more compelling and plausible opposing inference that could be drawn from Plaintiffs' theory is that [Tulco] planned to sell off [its] interest in [FIGS] during each of the Offerings as a means to" recoup its investment "regardless of [FIGS'] stock price." *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *16 (S.D.N.Y. May 19, 2023).

### B. Section 20(a) Control Person Liability

Because Plaintiffs fail to establish a primary violation of Section 10(b) or 20A, their 20(a) claim must be dismissed. (Mot. 12.)

Plaintiffs' control allegations fail. The Opposition tries to rewrite the standard. (Opp. 59.) To state a *prima face* case, the Ninth Circuit requires the "defendant ***exercised*** actual power or control over the primary violator." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Thus, Plaintiffs "must plead" defendants "exercised a significant degree of day-to-day operational control" and "actual authority over the preparation" of public statements. *Vicari v. Voyager Fin. Grp., LLC*, 2013 WL 12136519, at *5 (C.D. Cal. Sept. 17, 2013). Plaintiffs cite *Flood v. Miller*, 35 F.App'x 701, 703 (9th Cir. 2002), stating "[i]t is not necessary to show actual participation or the exercise of actual power." *Flood* does not address the standard for sufficiently alleging actual exercise of control. Rather, *Flood* addresses the separate question of whether a plaintiff must plead defendants "culpably participated" in issuing the misleading statements at issue because

5

lack of "culpable participation" is an affirmative defense. *Id.* That Plaintiffs need not plead around an affirmative defense does not relieve Plaintiffs of pleading the basic element of their control person claim—that Tulco had "day-to-day oversight" of FIGS and "actual authority" over FIGS' public statements. *Short v. Dondanville*, 2012 WL 12888360, at *14 (C.D. Cal. Oct. 5, 2012) (explaining distinction between threshold standard and "culpable participation" affirmative defense).

The Opposition's attempts to show control fail. ***First***, Plaintiffs point to the same Tulco website about its "hands-on" approach with portfolio companies. (Opp. 61.) Courts reject conclusory allegations such as these. *Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *12 (N.D. Ill. Apr. 19, 2012) ("general statements contained in the 2008 Form 10–K that [defendant] 'influences [the company] affairs significantly'" insufficient). Plaintiffs provide no authority otherwise, and fail to address the dozen cases cited dismissing Section 20(a) claims against investor firms like Tulco.

***Second***, Plaintiffs argue Tulco was a majority owner in FIGS at the start of the Class Period, there are two Tulco-related individuals on the board, and Tulco had to approve certain major FIGS actions. (Opp. 60-62.) Courts reject these allegations as "too conclusory to establish [control person] liability"—even when an investor owns majority or a near-majority interest—as they "do not indicate that the [investor]" actually exercised the requisite control. *Welgus*, 2017 WL 167708 at *13 ("controlling shareholder" private equity firm owning 72% of stock, two board seats, and "had to approve [the] offerings" not control person); *Brasher*, 2012 WL 1357699, at *12 (48% controlling ownership, multiple board seats insufficient); (Mot. 13-14.)[2]

Facts on which Plaintiffs rely to assert control demonstrate the opposite. Plaintiffs argue the Stockholder's Agreement and Voting Agreement reinforced Tulco and Tull's control even after Tulco's holdings dropped below a majority after the IPO. (Opp. 61.) To

---

[2] Plaintiffs cite *In re Musicmaker.com Securities Litigation*, 2001 WL 34062431 (C.D. Cal. June 4, 2001) ("*Musicmaker*"), alleging that defendant is a majority shareholder is sufficient. Far from articulating a standard, that court so held noting at the time the court found no contrary authority. Later cases have held otherwise.

the contrary, while Tulco had majority stock ownership when it entered both Agreements, the Agreements actually ***prevent*** Tulco from acting as a majority by creating a board structure wherein Tulco was only guaranteed one board seat and FIGS executives were guaranteed two board seats. (Ex. 1 at 8; Ex. 2 at 32.) Thus, Tulco ***ceded*** control by agreeing to be "obligated to vote for" and be outnumbered by non-Tulco board members; courts reject reliance on such agreements to allege control for this precise reason. *Dartley v. ErgoBilt Inc.*, 2001 WL 313964, at *1 (N.D. Tex. Mar. 29, 2001); (Mot. 13-14.)³

***Third***, Plaintiffs cite to a ***single*** case to argue "Courts in this District" would impute control from Willhite and Lafley to Tulco. (Opp. 64.) The prevailing authority explicitly rejects the presumption that an outside director acts on behalf of their employer as "speculation" "[w]ithout any facts to show that [investor]" actually "direct[ed]" their actions on the board. *Welgus*, 2017 WL 167708, at *13.⁴ The Complaint is devoid of such allegations. The imputation is particularly invalid as to Lafley because he is an independent director of Tulco, not an employee; Plaintiffs do not allege otherwise or that Tulco even placed him on the FIGS board, let alone directed him (or Willhite) to act in the interest of one of his board companies while serving on another. Further, courts uniformly dismiss control claims where the alleged controller has a minority number of board seats. (Mot. 13-14.) If Plaintiffs' imputation argument had merit, ***all*** of those cases would come out the other way.⁵

### III. PLAINTIFFS' SECURITIES ACT CLAIMS FAIL

#### A. Section 11 and Section 12

Plaintiffs' Section 11 and 12 claims should be dismissed because Plaintiffs fail to allege any false or misleading statement. (FIGS' Reply 4-10.) In any event, neither Tulco

---

³ Plaintiffs' authority (Opp. 62-63) is distinguishable because they involve allegations where the investor had majority board control, which Tulco does not.

⁴ (Mot. 19); *In re Envision*, 2019 WL 6168254, at *30 (rejecting presumption "two board members continued to act on behalf of [private equity firm] rather than fulfill their fiduciary duties as board members").

⁵ Plaintiffs' lone citation, *In re American Apparel, Inc. Shareholder Litigation*, 2013 WL 10914316, at *37 n.262 (C.D. Cal. Aug. 8, 2013), is distinguishable. The court held imputation was appropriate because the complaint alleged the outside investors "exert[ed] control over [company's] strategic decision-making through its designated directors"—the very allegations missing here.

7

nor Tull can be liable under Section 11 or 12 for additional reasons below.

                1.        <u>Tulco and Tull Are Not Liable Persons Under Either Statute</u>

**Section 11**. The Opposition repeats the Complaint's allegations that Tulco and Tull are captured by Section 11 because: (i) they constitute a "partner" of FIGS under Section 11(a)(2); and (ii) Willhite's potential liability as a FIGS director and signatory of the offering documents can be imputed to Tulco. (Opp. 54-55.) These allegations fail.

***First***, courts reject the argument venture capital defendants qualify as "partners" under Section 11(a), given that Section 11(a) is applied "narrowly." (Mot. 16.) The Opposition does not address this authority. Instead, it points to the aforementioned Tulco website and a similar stray comment from Defendant Spear. (Opp. 54.) Plaintiffs provide no authority that an investor firm can be liable under Section 11 as a legal "partner" where the firm generically said it works with companies in which it invests. If Plaintiffs were correct, it would expose every venture capital firm to Section 11 liability, even though they are not identified as statutory defendants. For this reason, courts routinely find that investor defendants "do[] not fall within any of the categories enumerated in § 11." *In re Prestige*, 2006 WL 2147719, at *9-10; *In re OPUS360 Corp. Sec. Litig.*, 2002 WL 31190157, at *11-12 (S.D.N.Y. Oct. 2, 2002).

***Second***, Plaintiffs' imputation argument fails for reasons discussed (*supra* II.B). Indeed, in every case cited in the Motion (16-17) and here rejecting Section 11 allegations against an investor firm, that investor had at least one board representative. If Plaintiffs were right, those cases would have come out differently. *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *21 (C.D. Cal. July 1, 2008) ("[P]laintiff has not alleged that [directors] violated § 11 while acting as agents for the VC defendants.").[6]

**Section 12**. Tulco and Tull are not "statutory sellers" under Section 12(a)(2).

***First***, Plaintiffs argue Tulco is a seller because it sold shares. This ignores clear law that in firm commitment underwritten offerings (like here), underwriters are the direct

---

[6] Plaintiffs cite to *Musicmaker* which imputed a director's Section 11 and 12 onto the directors' employer under "respondent superior" theories. That court did so with no analysis, resting on defendants' not responding to the argument. (Opp. 18.)

8

sellers and anyone who included their shares in the offering are not "statutory sellers" unless they actively solicited the offering. (Mot. 18.) Plaintiffs do not refute this.

*Second*, the Complaint contains no specific allegations Tulco actively solicited the offering. (Mot. 18.) Despite this, the Opposition contends Tulco is a solicitor because Tulco "stood to gain" from the offerings, had a "hands-on" involvement in FIGS, and because Willhite signed the registration statements. (Opp. 56.) Plaintiffs make another argument that would apply to any investor firm whose portfolio company went public. Unsurprisingly, courts reject these allegations. *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *5-6 (C.D. Cal. Dec. 17, 2019) (investor "exercised significant influence over corporate management," "stood to gain from the IPO," "engaged in drafting sessions," and board representatives signed registration statement "insufficient to show [investor] actively solicited the sale"); *Welgus*, 2017 WL 167708, at *19; *Mehedi v. View, Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023).[7]

### 2. Plaintiffs Do Not Have Statutory Standing Concerning the SPO

Plaintiffs allege they bought shares "pursuant and/or traceable to the Company's SPO." (Compl. 1). The Ninth Circuit rejects such allegations as insufficient to establish standing for Section 11 and 12 claims and dismisses such claims at the pleading stage. *In re Cent. Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1106-07 (9th Cir. 2013); (Mot. 17-18; 19).

Plaintiffs argue one plaintiff bought shares a few days before the SPO closed and at the SPO price. (Opp. 57.) Courts hold "even alleging [] someone bought shares on the day of the [] Offering at the offering price is inadequate to establish statutory standing at [the pleading] stage, due to a significant possibility that the shares purchased originated from the prior offering but were being traded at the secondary offering price." *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *7-8 (N.D. Cal. July 5, 2022) (dismissing Section 11 and

---

[7] Plaintiffs' cases do not involve investor entities qualifying as a statutory seller. (Opp. 56); *Flynn v. Sientra, Inc.*, 2016 WL 3360676 (C.D. Cal. June 9, 2016) (underwriter direct seller); *In re Charles Schwab Corp. Sec. Litig.,* 257 F.R.D. 534, 549-50 (N.D. Cal. 2009) (issuer officer engaged in marketing activities).

12 claims for no standing); *Thomas v. Magnachip Semiconductor Corp.*, 167 F.Supp.3d 1029, 1055 (N.D. Cal. 2016); (Opp. 62).[8]

### B. Section 15

Plaintiffs' Section 15 claim fails where they have not pled (i) an underlying primary violation (*supra* III.A); nor (ii) sufficient control person allegations (*supra* II.B.)

DATED: August 9, 2023

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        By:   */s/ Peter B. Morrison*
              PETER B. MORRISON
              Attorneys for Defendants
              TULCO, LLC AND THOMAS J. TULL

---

[8] Plaintiffs cite mostly out of circuit cases holding conclusory allegations of purchase in an offering were sufficient at the pleading stage (or who deferred tracing arguments to the class certification stage). That is not the law in the Ninth Circuit as shown.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Tulco, LLC and Thomas J. Tull, certify that this brief contains 3,378 words, which complies with the word limit set by Court Order dated May 8, 2023.

DATED: August 9, 2023

                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                By:    */s/ Peter B. Morrison*
                          PETER B. MORRISON
                          Attorneys for Defendants
                      TULCO, LLC AND THOMAS J. TULL