1
2
3
4
5
6
7
8
9
10

O

# United States District Court
# Central District of California

| | |
|---|---|
| SEAN RYAN, | Case № 2:22-cv-07939-ODW (AGRx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT [118] [120] [123]** |
| v. | |
| FIGS, INC. et al., | |
| Defendants. | |

## I.    INTRODUCTION

On November 1, 2022, Plaintiff Sean Ryan filed the initial Complaint in this putative securities class action. (Compl., ECF No. 1.)  Thereafter, the case was consolidated with *City of Hallandale Beach Police Officers and Firefighters Personnel Retirement Trust v. FIGS, Inc. et al.*, No. 2:22-cv-08912-ODW (KSx). (Min. Order, ECF No. 64.)  The Court designated this case as the lead case and appointed Ronald Hoch, City of Pensacola Police Officers' Retirement Plan ("City of Pensacola"), City of Warren Police and Fire Retirement System ("City of Warren"), Kissimmee Utility Authority Employees' Retirement Plan ("Kissimmee"), and Pompano Beach Police & Firefighters' Retirement System ("Pompano Beach") (collectively, "Plaintiffs") as the lead plaintiffs in the consolidated action.  (*Id.*)

On April 10, 2023, Plaintiffs filed their consolidated Class Action Complaint. (Class Action Compl. ("CAC"), ECF No. 88.)  The Court subsequently dismissed the Class Action Complaint with leave to amend ("January 2024 Order").  (Order. Mot. Dismiss ("Order MTD") 35, ECF No. 113.)  Thereafter, on March 19, 2024, Plaintiffs filed their First Amended Class Action Complaint ("FAC") against Defendants FIGS, Inc. ("FIGS"), Heather Hasson, Catherine Spear, Daniella Turenshine, Jeffrey D. Lawrence, J. Martin Willhite, Tulco, LLC ("Tulco"), Sheila Antrum, Michael Soenen, and fifteen underwriters[1] (collectively, the "Underwriters") involved in FIGS's Initial Public Offering ("IPO") and Secondary Public Offering ("SPO").  (First Am. Compl. ("FAC"), ECF No. 117; Suppl. FAC, ECF No. 148.)

All Defendants, in three groupings, now move to dismiss the FAC ("Motions"). (Tulco Mot. Dismiss ("Tulco MTD"), ECF No. 118; Underwriters Mot. Dismiss ("Underwriters MTD"), ECF No. 120; FIGS Mot. Dismiss ("FIGS MTD"), ECF No. 123.)  For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions.[2]

## II.    BACKGROUND

The Court previously detailed the complex procedural history and extensive factual allegations in this case.  As the factual allegations in the 164-page FAC remain largely the same as in the CAC, the Court incorporates much of the background discussion from its January 2024 Order by reference here.  (Order MTD 3–8.)  The factual allegations and procedural history relevant to the disposition of the present Motions are summarized below.[3]

---

[1] The named underwriters are Goldman Sachs & Co. LLC; Morgan Stanley & Co. LLC; Barclays Capital Inc.; Credit Suisse Securities (USA) LLC; BofA Securities, INC.; Cowen and Company, LLC; Guggenheim Securities, LLC; KeyBanc Capital Markets Inc.; Oppenheimer & Co. Inc.; Piper Sandler & Co.; Telsey Advisory Group LLC; Academy Securities, Inc.; R. Seelaus & Co., LLC; Samuel A. Ramirez & Company, Inc.; and Seibert Williams Shank & Co., LLC.  (FAC ¶¶ 65–79.)

[2] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] All factual references derive from Plaintiffs' First Amended Class Action Complaint and Supplement to the First Amended Class Action Complaint, and well-pleaded factual allegations are

## A.    Factual Background & Parties

In 2013, Hasson and Spear co-founded FIGS, a direct-to-consumer ("DTC") medical apparel company that sells premium scrubs, lab coats, jackets, vests, and medical apparel.  (FAC ¶¶ 43, 86–87.)  FIGS's DTC model bypassed third-party wholesalers and retailers, allowing FIGS to sell directly to customers through its website and mobile application.  (*Id*. ¶ 88.)  During the COVID-19 pandemic, FIGS experienced "explosive growth" due to heightened demand for medical scrub products and a global shift to online sales.  (*Id*. ¶¶ 102–104.)  Following several years of exponential growth, FIGS went public with its IPO, which closed on June 1, 2021, and its SPO, which closed on September 20, 2021.  (*Id.* ¶ 105.)

The IPO and SPO documents (collectively, the "Registration Statements") were reviewed and signed by FIGS's Chief Financial Officer, Lawrence, and Directors of FIGS's Board, Antrum, Soenen, and Willhite.  (*Id.* ¶¶ 47, 49–51.)  Turenshine later replaced Lawrence as FIGS's CFO, in December 2021.  (*Id.* ¶ 215.)  The Underwriters agreed to purchase and sell shares in FIGS's IPO and SPO.  (*Id.* ¶¶ 63–64.)  Tulco is a venture capital investment firm that owned a substantial percentage of FIGS's common stock and sold shares during the IPO and SPO.  (*Id.* ¶ 53.)  Willhite simultaneously served as Tulco's Vice Chairman and as a Director on FIGS's Board. (*Id.* ¶ 49.)

Plaintiffs are investors who acquired FIGS Class A common stock pursuant to and/or traceable to FIGS's IPO and/or SPO, conducted on or around May 27, 2021 and September 16, 2021, respectively, and during the period thereafter between March 9, 2022, and February 28, 2023 (the "Class Period").  (*Id*. ¶ 1.)

## B.    Procedural History

On March 19, 2024, Plaintiffs filed the operative FAC, renewing their allegations under sections 11, 12(a)(2), and 15 of the Securities Act of 1933

---

accepted as true for purposes of these Motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

("Securities Act") and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Although the factual allegations in the FAC remain primarily the same as in the CAC, the FAC changes the Class Period, and adds confidential witnesses and new board meeting allegations.

Under the Securities Act, Plaintiffs allege that FIGS's Registration Statements contained eighteen untrue statements or omissions regarding FIGS's ability to use data to predict buying patterns, reliance on core products to maintain low inventory risk, and reason for increased air freight usage. (*Id.* ¶¶ 141–48, 154–55, 162–67, 169–70.) Plaintiffs assert: Securities Act section 11 ("Section 11") claims against FIGS, Hasson, Spear, Lawrence, Willhite, Antrum, Soenen, Tulco, and the Underwriters; Securities Act section 12(a)(2) ("Section 12(a)(2)") claims against FIGS, Hasson, Spear, Tulco, and the Underwriters; and Securities Act section 15 ("Section 15") claims against Hasson, Spear, Lawrence, and Tulco. (*Id.* ¶¶ 43–53, 65–81, 172–206.)

Under the Exchange Act, Plaintiffs allege that FIGS, Hasson, Spear, and Turenshine made over forty false and misleading statements during the Class Period. (*Id.* ¶¶ 249–307.) Plaintiffs similarly claim these statements misled investors about FIGS's ability to use data to predict buying patterns, reliance on core products to maintain low inventory risk, and reason for increased air freight usage. (*Id.*) Plaintiffs assert: Exchange Act section 10(b) ("Section 10(b)") claims against FIGS, Hasson, Spear, and Turenshine; and Exchange Act section 20(a) ("Section 20(a)") claims against Hasson, Spear, Turenshine, Willhite, and Tulco. (*Id.* ¶¶ 212–21, 377–87.)

Defendants move to dismiss the FAC on the grounds that the FAC fails to satisfy Federal Rule of Civil Procedure ("Rule" or "Rules") 8, 9(b), and 12(b)(6). (*See* Tulco MTD; Underwriters MTD; FIGS MTD.) The Motions are fully briefed.[4]

---

[4] (Omnibus Mem. ISO Opp'n ("Opp'n"), ECF No. 129; FIGS Reply, ECF No. 135; Tulco Reply, ECF No. 137; Underwriters Reply, ECF. No. 139; FIGS Suppl. MTD, ECF No. 151; Tulco Suppl. Mem. ISO MTD, ECF. No. 152; Pl. Suppl. Mem. ISO Opp'n, ECF No. 153; FIGS Suppl. Reply ISO MTD, ECF No. 154.)

# III.    LEGAL STANDARD

## A.    Rule 12(b)(6) Generally

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Because Plaintiffs in this action allege that Defendants fraudulently violated federal securities laws, Plaintiffs' initial burden is heightened by the "dual pleading requirements of [Rule] 9(b) and the [Private Securities Litigation Reform Act

('PSLRA'), 15 U.S.C. § 78u–4]." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

## B.    Pleading Fraud Under Rule 9(b)

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction." *Vess*, 317 F.3d at 1106. "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*

## C.    Pleading Requirements Under the PSLRA

Securities fraud claims must also meet a higher pleading standard under the PSLRA. Specifically, a securities fraud plaintiff must plead "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000) (citing 15 U.S.C. § 78u-4(b)(1)). Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)).

## IV.    JUDICIAL NOTICE

As a preliminary matter, the Court addresses Tulco's, FIGS's, and Plaintiffs' separate requests for judicial notice.[5]  In total, the parties seek judicial notice of twenty-two documents.[6]

---

[5] (Tulco Req. Judicial Notice ("RJN"), ECF No. 119; FIGS RJN, ECF No. 125; Pl. RJN, ECF No. 130; Decl. Gregory M. Potrepka ISO Pl. RJN ("Potrepka Decl. ISO Pl. RJN"), ECF No. 131; Pl. Omnibus Opp'n RJN ("Pl. Opp'n RJN"), ECF No. 132; Tulco Reply ISO RJN, ECF No. 138; FIGS Reply ISO RJN, ECF No. 141).

[6] The sheer volume of documentation and the arguments in the motion papers suggest that the parties may be mistreating the motions to dismiss as motions for summary judgement. For purposes of the

Although district courts generally may not consider evidence outside of the pleadings when ruling on a motion to dismiss under Rule 12(b)(6), *see Ritchie*, 342 F.3d at 907–08, a court may properly consider evidence outside of the pleadings if it is properly subject to judicial notice or is incorporated by reference into the pleadings, *Lee*, 250 F.3d at 688–89.

## A. Tulco's Request for Judicial Notice

Tulco seeks judicial notice of three exhibits, (Tulco RJN 2–5), all of which the Court judicially noticed in the January 2024 Order, (Order MTD 10–11). Plaintiffs now raise objections to the Court accepting the third exhibit, Tulco's Form 4, "to demonstrate anything related to Tulco's control over FIGS." (Pl. Opp'n RJN 16.)

While the court may appropriately "take judicial notice of the content of the SEC Forms 4 and the fact that they were filed with the agency[,] . . . [t]he truth of the content, and the inferences properly drawn from them" are not subject to judicial notice. *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008). Therefore, the Court's judicial notice of Tulco's Form 4 does not include any assessment as to the truth of its content or its inferences regarding Tulco's control over FIGS. As the Court previously granted judicial notice of these documents, and limits notice of the Form 4 to its content and the fact of its filing, the Court **DENIES AS MOOT** Tulco's request for judicial notice.

## B. FIGS's Request for Judicial Notice

FIGS seeks judicial notice of eighteen documents. (FIGS RJN 2–4; Decl. Heather Speers ISO MTD ("Speers Decl.") Exs. A–R, ECF Nos. 126–129-9.) The Court previously granted judicial notice of Exhibits A, C, D, E, G, H, I, K, M, N, O,

---

instant Motions, the Court treats any judicially noticed documents "as part of the complaint, and . . . assume[s] its contents are true for the purposes of a motion to dismiss." *Ritchie*, 342 F.3d at 908. The Court does not make any factual determinations at this stage and considers only whether Plaintiffs' FAC sufficiently pleads "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

P, Q, and R.  (Order MTD 10–11.)  Plaintiffs oppose judicial notice of Exhibits B, F, I, J, and L.  (Pl. Opp'n RJN 4–17.)

1.    Exhibits A, C, D, E, G, H, I, K, M, N, O, P, Q, and R

In the January 2024 Order, the Court judicially noticed Exhibits A, C, D, E, G, H, I, K, M, N, O, P, Q, and R.  (Order MTD 10–11.)  Exhibits A, C, D, E, G, K, M, N, O, P, Q, and R are also incorporated by reference in the FAC.  (Speers Decl. ¶¶ 2, 4–6, 8, 12, 14–18 (listing all paragraphs in the FAC referencing each exhibit).)  Exhibits C, E, H, N, and P are SEC filings.  These exhibits are therefore properly judicially noticed or incorporated by reference.

Plaintiffs newly object to judicial notice of Exhibit I, FIGS's January 2022 corporate presentation.  (Pl. Opp'n RJN 13–14; *see also* Speers Decl. Ex. I.)  "In ruling on a motion to dismiss under the PSLRA, the court may take judicial notice of information that was publicly available to reasonable investors at the time the defendant made the allegedly false statements."  *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1158 (C.D. Cal. 2007) (internal quotation marks omitted).  The Court may properly judicially notice Exhibit I, not for the truth of its contents, but "only [for] the fact that the information contained in the presentation was available to investors as of" January 2022.  *Garcia v. J2 Global, Inc.*, No. 2:20-cv-06096-FLA (MAAx), 2021 WL 1558331, at *9 (C.D. Cal. Mar. 5, 2021).  Accordingly, the Court **OVERRULES** Plaintiffs' objection to judicial notice of Exhibit I.

As the Court, in the January 2024 Order, properly judicially noticed and found incorporated Exhibits A, C, D, E, G, H, I, K, M, N, O, P, Q, and R, the Court **DENIES AS MOOT** FIGS's request for judicial notice as to these exhibits.

2.    Exhibits B, F, J, and L

Plaintiffs additionally object to judicial notice of the following newly requested documents:  (1) materials from FIGS's March 5, 2021 board meeting (Exhibit B), (2) materials from FIGS's November 9, 2021 board meeting (Exhibit F), (3) materials from FIGS's March 7, 2022 board meeting (Exhibit J), and (4) materials from FIGS's

May 10, 2022 board meeting (Exhibit L).  (Pl. Opp'n RJN 4–13.)  Although Plaintiffs refer to the events at these board meetings extensively to form the basis for their claims, (Speers Decl. ¶¶ 3, 7, 11, 13), they contest the authenticity and completeness of the proffered exhibits, (Pl. Opp'n RJN 8–12).  Judicial notice is appropriate only when the facts are "not subject to reasonable dispute."  Fed. R. Evid. 201(b). Similarly, "[t]he incorporation by reference doctrine applies *only* when a document is central to plaintiff's claim and no party questions its authenticity."  *Gerritsen v. Warner Bros. Ent.*, 112 F. Supp. 3d 1011, 1024 (C.D. Cal. 2015).  As Plaintiffs dispute the authenticity and completeness of these documents, the Court **DENIES** FIGS's request for judicial notice of Exhibits B, F, J, and L, and declines to consider these exhibits as incorporated by reference.

**C.    Plaintiffs' Request for Judicial Notice**

Plaintiffs seek judicial notice of FIGS's stock prices on September 16, 2021. (Pl. RJN; Potrepka Decl. ISO Pl. RJN Ex. A, ECF No. 131-1.)  This request is unopposed and the Court "may take judicial notice of a company's published stock prices."  *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 816 (C.D. Cal. 2004).  Therefore, the Court **GRANTS** Plaintiffs' request for judicial notice.

## V.    DISCUSSION

Under the Securities Act, Plaintiffs assert three causes of action for violations of: (1) Section 11 against FIGS, Hasson, Spear, Lawrence, Willhite, Antrum, Soenen, Tulco, and the Underwriters; (2) Section 12(a)(2) against FIGS, Hasson, Spear, Tulco, and the Underwriters; and (3) Section 15 against Hasson, Spear, Lawrence, Tulco, and Willhite.  (FAC ¶¶ 172–206.)  Under the Exchange Act, Plaintiffs assert two causes of action for violations of: (1) Section 10(b) against FIGS, Hasson, Spear, and Turenshine; and (2) Section 20(a) against Hasson, Spear, Turenshine, Willhite, and Tulco.  (*Id.* ¶¶ 377–87.)  Defendants move to dismiss all causes of action.

**A.      Violations of Sections 11 and 12(a)(2) of the Securities Act**

Plaintiffs' first and second causes of action under Sections 11 and 12(a)(2) arise out of materially false or misleading statements or omissions allegedly contained in FIGS's Registration Statements. (*Id.* ¶¶ 172–200.) FIGS, Hasson, Spear, Lawrence, Willhite, Antrum, Soenen, Tulco, and the Underwriters (collectively, the "Securities Act Defendants") move to dismiss Plaintiffs' Sections 11 and 12(a)(2) claims for failure to plead a material misrepresentation or omission. (FIGS MTD 13–23; Tulco MTD 5–6, 8; Underwriters MTD 3.) Tulco and the Underwriters also move to dismiss Plaintiffs' Sections 11 and 12(a)(2) claims for lack of standing and lack of statutory liability. (Tulco MTD 6–9; Underwriters MTD 3–8.)

Section 11 creates a private right of action for any purchaser of a security where "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 12 imposes civil liability on any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements . . . not misleading." 15 U.S.C. § 77l(a)(2). "Sections 11 and 12(a)(2) are 'Securities Act siblings' with similar elements." *In re Velti PLC Sec. Litig.*, No. 13-cv-03889-WHO, 2015 WL 5736589, at *31 (N.D. Cal. Oct. 1, 2015) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010)).

As the analyses of the Sections 11 and 12(a)(2) causes of action overlap, the Court addresses them in tandem. The Court first considers the appropriate pleading standard, then analyzes whether Plaintiffs sufficiently allege material misrepresentations or omissions, statutory standing, and statutory liability.

1        *1.      Pleading Standard*

2        As a preliminary matter, the parties disagree whether the pleading standard of

3    Rule 8(a) or 9(b) applies to Plaintiffs' Securities Act claims.    Securities Act

4    Defendants assert that Rule 9(b)'s heightened requirements apply because the FAC

5    sounds in fraud.  (FIGS MTD 13; Tulco MTD 5, Underwriters MTD 3.)    Plaintiffs

6    argue that the Securities Act claims are not grounded in fraud and are subject to

7    Rule 8(a)'s lesser notice pleading.  (Opp'n 13.)

8        A plaintiff must "allege their claims with increased particularity under

9    [Rule] 9(b) if their complaint 'sounds in fraud.'"  *Rubke v. Capitol Bancorp Ltd.*,

10   551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *In re Daou Sys.,* 411 F.3d at 1027)).

11   Determining if a complaint "sounds in fraud" requires "a close examination of the

12   language and structure of the complaint, whether the complaint alleges a unified

13   course of fraudulent conduct and relies entirely on that course of conduct as the basis

14   of a claim."  *Id.* (internal quotation marks omitted).

15       Here, the Court previously found the CAC sounds in fraud.  (Order MTD 28.)

16   As in the CAC, the material misstatement allegations in the FAC continue to rely on a

17   unified course of conduct concerning FIGS's statements about: (1) FIGS's reliance on

18   data analytics, which Plaintiffs assert FIGS "did not have or was not using," (FAC

19   ¶¶ 149, 168, 257, 260, 264, 269); (2) FIGS's focus on nondiscretionary and

20   replenishment-driven core product strategy, which Plaintiffs assert was actually based

21   on Hasson and Spear's "personal taste or judgment" and rapid development, (*id.*

22   ¶¶ 149, 168, 276, 279, 284, 287, 291); and (3) FIGS's use of expensive airfreight,

23   which Plaintiffs allege was used routinely to accommodate Hasson and Spear's "last

24   minute changes" to orders and designs, (*id.* ¶¶ 156, 171, 295, 300, 304, 307).

25   Plaintiffs argue that the Securities Act and Exchange Act claims "do not overlap at all"

26   because the Exchange Act claims concern statements made *after* FIGS issued the

27   Registration Statements.  (Opp'n 13–14.)  However, Plaintiffs cannot "scissor out a

28   non-fraud claim from the center of [a] unified course of conduct in order to evade the

Rule 9(b) requirement." *In re Metricom Sec. Litig.*, No. C 01-4085 PJH, 2004 WL 966291, at \*24 (N.D. Cal. Apr. 29, 2004). The gravamen of Plaintiffs' FAC sounds in fraud.

The heightened pleading standard of Rule 9(b) therefore applies to Plaintiffs' Securities Act claims against FIGS, Hasson, and Spear because the fraud-based Exchange Act and Securities Act claims against them rely on a unified course of fraudulent conduct. *See Rubke*, 551 F.2d at 1161 (finding a complaint sounds in fraud when it "employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act.").

In contrast, Plaintiffs do not assert fraud-based Exchange Act claims against Lawrence, Willhite, Antrum, Soenen, Tulco, and the Underwriters. The factual allegations and claims made against these Defendants are instead rooted in negligence. While allegations of fraudulent conduct must satisfy Rule 9(b), "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1105. Thus, the Securities Act claims against Lawrence, Willhite, Antrum, Soenen, Tulco, and the Underwriters need only satisfy the notice pleading standard under Rule 8(a).

### 2.  *Misrepresentation or Omission of Material Fact*

In the January 2024 Order, the Court dismissed Plaintiffs' Section 11 and Section 12(a)(2) claims for failure to show why the statements were false and misleading. (Order MTD 28–31, 34–35.) To attempt to cure the deficiencies, Plaintiffs add new factual allegations from confidential witness statements and board meeting materials. (*See* FAC ¶¶ 140–71.)

Under Section 11, a plaintiff must plead facts proving: "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke*, 551 F.3d at 1161 (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). "By definition, a

plaintiff must show that a purported misstatement in a registration statement was misleading at the time the registration statement was issued." *In re: Resonant Inc. Sec. Litig.*, No. 2:15-cv-01970 SJO (PJWx), 2016 WL 1737959, at *7 (C.D. Cal. Feb. 8, 2016). Similarly, "[a] claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164. "The 'misstatement or omission' requirement under Section 12(a)(2) is materially identical to that under Section 11." *In re Velti PLC*, 2015 WL 5736589, at *31.

Here, FIGS's Registration Statements allegedly misrepresented that: (1) FIGS maintained a low-risk product line because FIGS possessed data analytics capabilities that permitted FIGS to "reliably predict buying patterns" and "anticipate demand," (FAC ¶¶ 141–43, 146–47, 162–63, 165–67); (2) FIGS maintained low risk inventory because FIGS kept "a focus on [its] core scrub offerings" and "utilize[d] a disciplined buying approach," (*id*. ¶¶ 144–45, 164); and (3) FIGS utilized more expensive air freight due to factors beyond FIGS's control, (*id*. ¶¶ 154–55, 169–70). Plaintiffs rely heavily on the statements of confidential witnesses to show that the above statements are false.

The Court first considers the adequacy of the confidential witness statements, then analyzes whether Plaintiffs sufficiently allege material misrepresentations or omissions under Rules 9(b) and 8(a).

### a. Confidential Witnesses

The FAC adds statements from two confidential witnesses to show the alleged misstatements were false and misleading. (*Id*. ¶¶ 14–36.) "[C]onfidential witness statements may only be relied upon where the confidential witnesses are described 'with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'" *Zucco*, 552 F.3d at 995. To determine whether a plaintiff adequately pleads that confidential witnesses have personal knowledge of the event they report, "the court considers the level of

detail provided by the confidential witnesses, the plausibility of the allegations, the number of sources, the reliability of the sources, corroborating facts, and similar indicia of reliability." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 767 (9th Cir. 2023).

Confidential Witness 1 ("CW-1") joined FIGS in 2023 and "worked within the Information Technology ('IT') Department." (FAC ¶ 15.) Plaintiffs rely on CW-1's statements to show that FIGS's data systems and demand planning infrastructure was not as "advanced" as FIGS represented in its Registration Statements. (*Id.* ¶¶ 16–23.) But FIGS did not employ CW-1 until 2023, *after* FIGS made the alleged misstatements and omissions in 2021 and 2022. (*See id.* ¶¶ 1, 249–307 (alleging misstatements in the Registration Statements issued in 2021 and in subsequent SEC filings and earnings calls in 2022).) Accordingly, Plaintiffs fail to adequately show how CW-1 possesses the information alleged for the relevant period, as CW-1 did not occupy any position at FIGS when the misstatements were allegedly made. *See, e.g.*, *Zucco*, 552 F.3d. at 996 (finding allegations from two confidential witnesses unreliable because they were not employed during the time period in question and had only secondhand information).

Confidential Witness 2 ("CW-2") worked as a Product Developer at FIGS from August 2020 to February 2023. (FAC ¶ 24.) CW-2 reported to the Head of Product Development and, upon receiving product orders from the merchandising team, worked on the product orders and communicated with the manufacturing factories. (*Id.* ¶ 25.) Plaintiffs rely on CW-2's statements to show that FIGS lacked a demand planning system, Spear's and Hasson's personal preferences resulted in last-minute changes in product launches, and the last-minute changes resulted in reliance on expensive air freight usage. (*Id.* ¶¶ 29–36.) However, many of CW-2's statements, as pleaded, are opinion, speculation, or based on hearsay rather than personal knowledge—i.e. CW-2 "*would be told* Hasson 'hates the fabrics, or the color,'" (*id.* ¶ 29 (emphasis added)), CW-2 "*view[ed]* that product development at FIGS was based

on intuition rather than data," (*id*. ¶ 35 (emphasis added)), and "changes from Hasson or Spear *seemed to be* based on their own personal taste or judgment rather than data," (*id.* (emphasis added)).  Such statements are not reliable.  *See Zucco*, 552 F.3d at 997 (finding knowledge based on "vague hearsay" insufficiently reliable); *In re Downey Sec. Litig*., No. 2:08-cv-03261-JFW (RZx), 2009 WL 2767670, at *10 (C.D. Cal. Aug. 21, 2009) (finding statements "based on mere rumor and speculation" unreliable).  Further, Plaintiffs fail to show how CW-2 was positioned to know the alleged information—CW-2 was a Product Developer who did not work in FIGS's data analytics, demand planning, or logistics teams, yet CW-2 makes statements regarding FIGS's data system capabilities and efforts; FIGS's lack of a Product Lifecycle Management system to predict buying patterns and demand; and FIGS's unreasonable usage of air freights.  (FAC ¶¶ 31–32, 34–36.)

Therefore, after eliminating CW-2's statements based on opinion, speculation, and hearsay, and disregarding CW-2's statements unsupported by personal knowledge, the Court relies on CW-2's statements in the analysis below only to the extent they concern product launches and product development, subjects which Plaintiffs adequately allege CW-2's personal knowledge.

### b. Rule 9(b) Defendants

As mentioned, Plaintiffs' Section 11 claims against FIGS, Hasson, and Spear are grounded in fraud such that Rule 9(b)'s heightened pleading standard applies.  *See Rubke*, 551 F.3d at 1161.  Under this heighted pleading requirement, Plaintiffs must point "to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants" to show "what is false or misleading about a statement, and why it is false."  *Id.*

Plaintiffs fail to plead why FIGS's statements regarding its data analytics tools and capabilities were false.  In its Registration Statements, FIGS allegedly touted that its data solutions and analytics can deliver customer insights, predict buying patterns, and lead efficiencies in supply chain and new product development.  (FAC ¶¶ 141–43,

146–47. 162–63, 165–67.)  To establish these statements are false, Plaintiffs rely on the statements of CW-1 and CW-2.  (*Id*. ¶¶ 149, 168.)  But, as described above, Plaintiffs fail to show these confidential witness statements are reliable or based on personal knowledge.  Therefore, these allegations are insufficient to show falsity.

Similarly, Plaintiffs fail to show FIGS's statements regarding its shipping arrangements are false and misleading.  In the Registration Statements, FIGS allegedly stated that its "ability to receive inventory efficiently . . . may be negatively affected by factors beyond [FIGS's] control" and it "may from time to time need to continue to use more expensive air freight."  (*Id*. ¶¶ 155, 169–70.)  Plaintiffs assert these statements are materially false because FIGS's increased use of air freight was not due to reasons beyond FIGS's control, but rather due to Hasson's and Spear's last-minute design changes.  (*Id*. ¶ 171.)  Plaintiffs rely on CW-2's statements to show that last-minute changes "one hundred percent affected the need to use air freight."  (*Id*. ¶ 156.)  However, CW-2 lacks personal knowledge of FIGS's shipping and logistics operations, and CW-2's statements regarding Hasson's and Spear's last-minute changes are unreliably based on speculation and hearsay.  Thus, Plaintiffs fail to show that FIGS's shipping arrangement statements are materially false and misleading.

FIGS's statements regarding its air freight usage, (*see id.* ¶ 154), is also not false or misleading.  FIGS allegedly misled investors to believe FIGS increased air freight was "temporary" when FIGS announced in its IPO that it "increased the use of more costly air freight during 2020 and during the three months ended March 31, 2021."  (*Id*.)  However, this statement is not materially misleading because it accurately disclosed the state of FIGS's air freight use during the period specified.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (holding that a statement is misleading and actionable under securities law if "it affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists").

Likewise, Plaintiffs inadequately plead that FIGS's statements regarding its ability to maintain low inventory were materially false at the time of the IPO and SPO. In the Registration Statements, FIGS stated it maintained "low inventory risk" and "inventory efficiency" by focusing on its core scrub offerings and utilizing a disciplined buying approach for its non-core colors and styles. (FAC ¶¶ 144–45, 148, 164.) To show these statements are false, Plaintiffs allege that during FIGS's March 2021 board meeting, before the Registration Statements were issued, FIGS's board identified low sell-through rates of non-core products that resulted in excess leftover inventory. (Suppl. FAC ¶¶ 149, 168.) But the alleged misstatements touted FIGS's ability to maintain low inventory *risk*, not low inventory in general. FIGS's board meeting discussion about increased inventory resulting from poor sales does not show FIGS departed from its "disciplined buying approach" or focus on core scrub offerings. Plaintiffs fail to satisfy their burden as to these statements.

Accordingly, the Court **GRANTS** Defendants' Motions on these grounds and **DISMISSES WITH PREJUDICE** Plaintiffs' claims based on the statement regarding FIGS's air freight use in 2020 and March 2021, because this statement is true and not actionable. (*Id.* ¶ 154.) The Court **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' remaining Section 11 and 12(a)(2) claims for failure to plead a material misstatement or omission under Rule 9(b).

### c. Rule 8(a) Defendants

The Court next considers whether Plaintiffs adequately plead that Lawrence, Antrum, Soenen, Tulco, Willhite, and the Underwriters made material misstatements or omissions under Rule 8(a)'s "short and plain statement" standard. To do so, the Court "must strip away the allegations that sound in fraud and see if the remaining allegations state a claim." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d. 1132, 1162 (C.D. Cal. 2008). Rule 8 requires each allegation to be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). However, Plaintiffs' allegations are deficient even under the "short and plain statement" standard.

First, Plaintiffs' allegations are neither short nor plain. The FAC recites lengthy statements attributed to the Registration Statement, followed by a generalized list of reasons why the statements are false or misleading. For example, in the FAC, Plaintiffs allege eight material misstatements or omissions under the section titled "FIGS Did Not Maintain Low Inventory Risk Because the Company Could Not Reliably Predict Buying Patterns and Was Rapidly Developing New Products for Which Demand Had Not Been Tested or Established." (FAC ¶¶ 141–48.) The eight statements in this section consist of lengthy paragraphs with selectively bolded and italicized sentences. (*Id.*) The statements also vary in context, with some statements attributing FIGS's ability to maintain low inventory risk to FIGS's merchandising and product launch model, and other statements attributing it to FIGS's ability to predict demand. (*Id.*) Yet, Plaintiffs provide a generalized list of reasons why all eight statements are false. (*See id.* ¶ 149.) Some of these reasons include irrelevant discussions about FIGS's use of airfreight. (*Id.* ¶ 149(e).) As pleaded, the Court cannot discern which fact makes which part of specific statements false or misleading. The FAC thus fails to comply with Rule 8's requirement of a "short and plain statement." Fed. R. Civ. P. 8(a)(1).

Additionally, the FAC fails to cure the "conflicting information" noted by the Court in the January 2024 Order. (Order MTD 30.) Plaintiffs initially allege Lawrence, Willhite, Antrum, and Soenen "had the opportunity to and did review, approve, and sign" the Registration Statements. (FAC ¶¶ 47, 49–51.) Plaintiffs later allege that "Lawrence, Willhite, Antrum, and Soenen signed *some* or all of the IPO Documents." (*Id.* ¶ 179 (emphasis added).) The Court, once more, requires Plaintiffs to clarify these inconsistencies regarding the Defendants' involvement with the Registration Statements.

The Court thus **GRANTS** Defendants' Motions and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 11 and 12(a)(2) claims against Lawrence, Antrum, Soenen, Tulco, Willhite, and the Underwriters for failure to satisfy Rule 8(a).

3.    *Statutory Standing*

Tulco and the Underwriters next challenge Plaintiffs' standing under Sections 11 and 12(a)(2).  (Tulco MTD 7–8; Underwriters MTD 3–4, 6–8.)

a.    Section 11 Standing

Regarding Plaintiffs' Section 11 claims, Tulco and the Underwriters contend Plaintiffs lack Section 11 standing to assert claims stemming from the SPO because Plaintiffs fail to trace their shares to the SPO.  (Tulco MTD 7–8; Underwriters MTD 3–4.)

To establish standing under Section 11, "a plaintiff must have purchased stock in the offering at issue, or trace later-purchased stock back to that offering."  *Scott v. ZST Digit. Networks, Inc.*, 896 F. Supp. 2d 877, 883 (C.D. Cal. 2012) (quoting *Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012, 1022 (N.D. Cal. 2011)).  Allegations that a plaintiff purchased "shares directly in the secondary offering itself" can satisfy statutory standing.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013).

Here, Plaintiffs do not allege that Hoch, City of Pensacola, City of Warren, and Kissimmee purchased stocks pursuant to or traceable to the SPO.  (*See* FAC ¶¶ 38, 41, 184.)  In their Opposition, Plaintiffs provide no substantive response or explanation for their failure to trace Hoch's, City of Pensacola's, and Kissimmee's stocks to the SPO.  (*See* Opp'n 24–25); *see also Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments . . . .").  Plaintiffs do, however, assert in its opposition that City of Warren "purchased FIGS common stock in the IPO and SPO, respectively." (Opp'n 24.)  But this allegation is conclusory and lacks any facts showing City of Warren purchased stocks traceable to the SPO.  Accordingly, Hoch, City of Pensacola, City of Warren, and Kissimmee lack standing to assert Section 11 claims based on the SPO.

On the other hand, Plaintiffs adequately allege that "Pompano Beach purchased FIGS Class A common stock . . . from an Underwriter Defendant in the SPO at the $40.25 SPO price." (FAC ¶ 42.)  This is sufficient to show that Pompano Beach has standing to assert a Section 11 claim based on the SPO.  *See In re Century Aluminum*, 729 F.3d at 1106; *see also In re CytRx Corp. Sec. Litig.*, No. 2:14-cv-1956-GHK (PJWx), 2015 WL 5031232, at *15 (C.D. Cal. July 13, 2015) (holding that plaintiffs met their burden as to Section 11 standing when they alleged that they "purchased shares during the offering period at the secondary offering price").

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Tulco and the Underwriters' Motions on these grounds.  In light of Plaintiffs failure to oppose dismissal of Hoch, City of Pensacola, and Kissimmee for lack standing as to the SPO, the Court **DISMISSES WITHOUT LEAVE TO AMEND** Hoch's, City of Pensacola's and Kissimmee's Section 11 claims based on the SPO.  *See Muller v. Morongo Casino, Resort, & Spa,* No. 5:14-cv-02308-VAP (KKx), 2015 WL 3824160, at *5 (C.D. Cal. June 17, 2015) (holding plaintiff's failure to oppose an argument amounted to concession of that argument).  Considering Plaintiffs' opposing argument that City of Warren purchased stocks in the SPO, the Court **DISMISSES WITH LEAVE TO AMEND** City of Warren's Section 11 claims.

### b. Section 12(a)(2) Standing

The Underwriters also argue that Hoch, City of Pensacola, and Kissimmee lack standing under Section 12(a)(2). (Underwriters MTD 6–8.)  Plaintiffs do not oppose this argument. (*See* Opp'n 24–26.)

"[A] suit under Section 12 may only be maintained by a person who purchased the stock in the offering under the prospectus." *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999) (citing *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 571–72 (1995)); *see also In re CytRx Corp.*, 2015 WL 5031232, at 14 (collecting cases).  Here, Plaintiffs allege that Hoch, City of Pensacola, and Kissimmee "purchased FIGS Class A common stock pursuant and/or traceable to the IPO." (FAC

¶¶ 38–39, 41.)  "Such wishy-washy allegations are insufficient to demonstrate that Plaintiffs have Section 12 standing—either [Plaintiffs] purchased shares directly from one of the Section 12 Defendants in the [Offering] or they did not."  *In re CytRx Corp.*, 2015 WL 5031232, at 14.  Therefore, Hoch, City of Pensacola, and Kissimmee lack standing under Section 12(a)(2).

As the allegations are insufficient to support Section 12(a)(2) standing and Plaintiffs concede the point by failing to address this argument in their opposition, *see Muller*, 2015 WL 3824160, at *5, the Court **GRANTS** the Underwriters' Motion on this basis and **DISMISSES WITHOUT LEAVE TO AMEND** Hoch's, City of Pensacola's, and Kissimmee's Section 12(a)(2) claims.

### 4.    Section 11 Statutory Liability

Tulco also argues it is not subject to statutory liability under Section 11.  (Tulco MTD 6–8.)  Plaintiffs contend that Tulco is liable under the doctrine of respondeat superior and as a "partner in the issuer."  (Opp'n 26–27.)

Section 11(a) sets forth a list of persons that may be sued for issuing a false registration statement.  15 U.S.C. § 77k(a).  This list includes: (1) "every person who signed the registration statement," (2) "every person who was a director of . . . or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted," (3) "every person who, with his consent, is named in the registration statement as being or about to become a director . . . or partner," (4) "every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement," and (5) "every underwriter with respect to such security."  *Id.*

Absent from Plaintiffs' Section 11 claims are any allegations specifying how Tulco may be liable under Section 11(a).  (*See* ¶¶ 172–86.)  In their opposition, Plaintiffs assert that Tulco is liable under the doctrine of respondeat superior and as a "partner in the issuer" at the time of the IPO.  (Opp'n 26–27.)  But the Court cannot

consider these arguments because they were not alleged in the FAC. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the proprietary of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Accordingly, the Court **GRANTS** Tulco's Motion on these grounds and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 11 claims against Tulco.

### 5.  *Section 12(a)(2) Liability as a Statutory Seller*

Tulco and the Underwriters next argue that they are not statutory sellers because Plaintiffs do not specify a particular purchaser or plead solicitation. (Tulco MTD 8–9; Underwriters MTD 4–6.)  On this basis, Tulco and the Underwriters move to dismiss the Section 12(a)(2) claims against them.

Under Section 12(a)(2), liability is limited "to two narrow classes of defendants: (1) immediate sellers ('remote purchasers are precluded from bringing actions against remote sellers'); and (2) those who solicit purchases to serve their 'own financial interests or those of the securities owner.'"  *Maine State Ret. Sys.*, 2011 WL 4389689, at *9 (quoting *In re Countrywide*, 588 F. Supp. 2d. at 1183).  To adequately establish liability under Section 12(a)(2), "a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain."  *In re Daou Sys.*, 411 F.3d at 1029.  A solicitation "appl[ies] various mechanisms to 'urge or persuade' another to buy a particular security."  *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F. 4th 1171, 1182 (9th Cir. 2024) (finding defendants solicited the purchase of securities by disseminating articles); *see also Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022) (finding defendants solicited investors by posting on social media).

Plaintiffs do not plausibly allege that Tulco is a statutory seller under Section 12. The allegations show that Tulco solicited purchasers by participating in the preparation of or signing the Registration Statements. (FAC ¶ 192.) However, mere participation is insufficient. *See Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (holding that Section 12's "failure to impose express liability for mere participation . . . suggests that Congress did not intend that the section impose liability on participants collateral to the offer or sale."); *see also Maine State Ret. Sys.*, 2011 WL 4389689, at *10 (requiring allegations of direct solicitation).

Conversely, Plaintiffs adequately plead that the Underwriters are statutory sellers for purposes of Section 12(a)(2). Here, Plaintiffs plead that the Underwriters sold, offered, or solicited purchase in the IPO and SPO through the Registration Statements and some Underwriters published analyst reports and coverage notes with a rating of "Buy." (FAC ¶¶ 153, 158–60.) Plaintiffs further allege that the Underwriters were paid discounts and commissions for the IPO and SPO. (*Id.* ¶¶ 63–64.) These allegations raise a plausible inference that the Underwriters solicited buyers through the published reports and coverage notes, for their own financial gain.

Accordingly, the Court **GRANTS** Tulco's Motion on these grounds and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 12(a)(2) claims against Tulco. The Court **DENIES** the Underwriters' Motion as to this basis.

**B.    Violation of Section 15 of the Securities Act**

In their third cause of action, Plaintiffs allege Hasson, Spear, Lawrence, Tulco, and Willhite are liable under Section 15 for material misrepresentations and omissions in the Registration Statements as control persons of FIGS. (FAC ¶¶ 204–05.) FIGS and Tulco move to dismiss the Section 15 claim for failure to plead a primary violation under Sections 11 and 12(a)(2). (FIGS MTD 2, Tulco MTD 10.)

Section 15 imposes secondary liability on someone who "controls" any person who is liable for a primary violation under either Section 11 or Section 12(a)(2). *See, e.g.*, *In re ZZZZ Best Sec. Litig.*, No. 87-cv-3574-RSWL (Bx), 1994 WL 746649, at *6

(C.D. Cal. Oct. 26, 1994). Section 15 imposes "controlling person" liability that cannot survive absent a primary violation. *See, e.g., In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) ("Section 20(a) and section 15 both require underlying primary violations of the securities laws." (citing 15 U.S.C. §§ 77o, 78t(a))). Because, as explained above, Plaintiffs fail to plead violations of Sections 11 and 12(a)(2), the Court **GRANTS** Defendants' Motions and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 15 claims as well.

## C.    Violation of Section 10(b) of the Exchange Act

Plaintiffs assert their fourth cause of action against FIGS, Hasson, Spear, and Turenshine (collectively, the "Exchange Act Defendants") for material misstatements made in conference calls, earnings calls, and SEC filings during the Class Period. (FAC ¶¶ 251–307.) Exchange Act Defendants renew their argument that Plaintiffs fail to plead falsity, scienter, and loss causation. (FIGS MTD 23–34; Tulco MTD 13.) As Plaintiffs' scienter allegations remain inadequate, the Court addresses only new scienter allegations in the FAC and declines to address Exchange Act Defendants' arguments regarding falsity and lost causation.

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated rule 10b-5 ("Rule 10b-5"), which makes it unlawful, in connection with the purchase or sale of any security:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 240.10b-5.

To establish a claim under Section 10(b), a plaintiff must prove the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

To successfully allege "scienter" under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A "strong inference" under this section "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 314 (2007). "In [the Ninth C]ircuit, the required state of mind is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 937 (9th Cir. 2023) (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017)). Thus, a defendant acts with the required state of mind, or scienter, only if she makes "false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys.*, 411 F.3d at 1015. "[D]eliberate recklessness is 'an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (alteration in original) (quoting *Zucco*, 552 F.3d at 991).

When analyzing the sufficiency of a plaintiff's scienter pleadings, a court must first "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *N.M. State Inv. Council v. Ernst & Young*, 641 F.3d 1089, 1095 (9th Cir. 2011) (quoting *Zucco*, 552 F.3d at 991–92). Second, "if no individual allegation is sufficient . . . the court [must] conduct a 'holistic' review of

1  the same allegations to determine whether the insufficient allegations combine to
2  create a strong inference of intentional conduct or deliberate recklessness." *Id.*

3        The FAC's scienter allegations remain largely identical to the allegations in the
4  CAC.  Plaintiffs attempt to cure the previously identified deficiencies by adding the
5  following allegations: (1) confidential witness statements, (FAC ¶¶ 315, 329–37);
6  (2) Exchange Act Defendants' access to data through management systems and
7  e-commerce platforms like Flexport, Whiplash, and Shopify, (*id.* ¶¶ 323–25);
8  (3) Hasson's, Spear's, and Turenshine's involvement in core operations by attending
9  board meetings, (*id.* ¶¶ 317, 345); and (4) board discussions during FIGS's March 7,
10  2022 and May 10, 2022 board meetings, (*id.* ¶¶ 349–50).

11        *1.    Confidential Witnesses*

12        Plaintiffs claim CW-1's and CW-2's statements confirm Exchange Act
13  Defendants knew or recklessly disregarded that FIGS lacked sophisticated demand
14  planning tools.  (Opp'n 37; *see also* FAC ¶¶ 329–37.)  But, as discussed above,
15  Plaintiffs fail to establish CW-1's and CW-2's personal knowledge regarding FIGS's
16  demand planning tools and data capabilities.  Plaintiffs plead no facts showing how
17  CW-1, who did not join FIGS until 2023, used or had access to FIGS's demand
18  planning and data analytics tools during the Class Period.  Likewise, Plaintiffs fail to
19  support that CW-2, a Product Designer, had personal knowledge about the breadth of
20  FIGS's demand planning and data analytics systems.  Statements from confidential
21  witnesses who are "simply not positioned to know the information alleged," are not
22  sufficient to raise a strong inference of scienter.  *Zucco*, 552 F.3d at 996.
23  Accordingly, the Court does not find a strong inference of scienter based on the
24  confidential witness statements.

25        *2.    Access to Data*

26        Next, Plaintiffs attempt to cure their previously deficient allegations under the
27  "access to data" theory of scienter.  (*See* Order MTD 16–18.)  Under this theory,
28  Plaintiffs again point to FIGS's access to management systems and e-commerce tools

such as Flexport, Whiplash, and Shopify to show that Exchange Act Defendants had data that contradicted their public statements.  (FAC ¶¶ 323–24.)  These tools purportedly gave FIGS relevant data on "inventory ramp downs, supply chain challenges, and freighting decisions."  (Opp'n 39.)  However, these allegations fare no better.

In the January 2024 Order, the Court specifically held that Plaintiffs' data allegations were insufficient when "Plaintiffs fail to identify any uncontroverted data, inconsistent with FIGS's public statement, that Hasson or Spear learned from these" tools.  (Order MTD 17.)  Plaintiffs fail once more to do so.  The allegations in the FAC under the "access to data" theory remain identical to the CAC and include no new allegations that Flexport, Whiplash, or Shopify provided FIGS, Hasson, Spear, or Turenshine with any hard numbers or data details that contradicted their public statements.  *See Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1034 (N.D. Cal. 2012) (finding that, "[a]lthough plaintiff refer[red] to the existence of sales and shipment data and ma[de] a general assertion about what the data showed, plaintiff allege[d] no hard numbers or other specific information" sufficient to plead scienter).  For the same reasons as in the January 2024 Order, the Court finds Plaintiffs' allegations of Exchange Act Defendants' data access fall short of establishing scienter.

### 3. Core Operations

Likewise, Plaintiffs fail once more to raise an inference of scienter under the "core operations" theory.  (*See* FAC ¶ 313; Order MTD 14–16.)

"The core operations theory of scienter relies on the principle that corporate officers have knowledge of the critical core operations of their companies."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (cleaned up).  Under this theory, a strong inference of scienter can be raised if a plaintiff can demonstrate "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating that executives had actual involvement in creating false reports."  *Id.*

However, "[w]here a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). As the Ninth Circuit notes, "[p]roof under this theory is not easy." *Intuitive Surgical*, 759 F.3d at 1062.  In "rare circumstances" a plaintiff may establish scienter under the core operations theory by pleading with particularity specific events of such prominence "that it would be 'absurd' to suggest that management was without knowledge of the matter." *Killinger*, 542 F.3d at 786.

Here, Plaintiffs attempt to cure their core operations allegations by adding CW-2's statements that Hasson and Spear controlled product launches.  To show that Hasson's and Spear's personal preferences—rather than data—influenced FIGS's product launches, CW-2 claims the team could not sign off on orders without Hasson and Spear's blessing.  (*Id.* ¶ 315.)  CW-2 "would be told 'Heather hates the fabric, or the color,' and was instructed to change the order," and "Spear 'dropped' a product launch of thousands of units simply because Spear changed her mind regarding the product and decided she 'didn't like it.'"  (*Id.*)  These statements, however, are based on hearsay and CW-2's impression or speculation.  Missing from these allegations are any facts showing CW-2 had direct access to Hasson and Spear to personally know why they did not "like" a product and whether their decisions considered, resulted from, or conflicted with other factors or data.  Without such facts, the allegations, at best, "support a 'mere inference of [the defendants'] knowledge of all core operations,' not scienter." *Intuitive Surgical*, 759 F.3d at 1062 (alteration in original).

Plaintiffs also plead facts to show Turenshine "was deeply involved in FIGS's core operations," (FAC ¶ 316), but these allegations are not sufficiently detailed.  The allegations point broadly to statements by Spear claiming that Turenshine "knows the company inside and out," has "deep knowledge and passion for the brand," and "played a critical role in [FIGS's] rapid and profitable growth."  (*Id.*)  However,

Spear's statements merely mirror the "broad statements of involvement" that the Court previously found did not rise to the level of specificity required to establish a strong inference of scienter or to impute scienter onto another individual. (Order MTD 15–16.) Therefore, these statements are similarly insufficient to infer scienter.

Lastly, Plaintiffs supplement their core operations allegations by pointing to Hasson's, Spear's, and Turenshine's presence at board meetings to show their direct involvement "in developing FIGS's products and in deciding to rely on airfreight to accommodate their last-minute changes." (Opp'n 43.) Plaintiffs allege the meetings included discussions about "delays in ocean freight shipping," "the impact of port and shipping delays," "port congestion," "global supply chain imbalances," "air freight and related costs," "inventory management," "timing of product launches," and "any issues with keeping products in stock." (FAC ¶ 317.) These allegations appear to support, rather than disprove, Exchange Act Defendants' alleged misstatements. For example, that the board discussed ocean freight shipping delays and global supply chain imbalances supports FIGS's public statement that its shipping arrangements and airfreight usage may be affected by "shipping delays for reasons outside of [FIGS's] control." (*Id.* ¶¶ 293, 302.) Thus, these allegations also fail to raise a strong inference of scienter.

Accordingly, Plaintiffs fail to cure the defects in their core operations theory to plead a strong inference of scienter.

### 4. *March 7, 2022 and May 10, 2022 Board Meetings*

Finally, Plaintiffs point to FIGS's March 7, 2022 and May 10, 2022 board meetings to show Exchange Act Defendants knew their subsequent public statements were false and misleading. (*Id.* ¶¶ 349–50.) During the board meetings, FIGS discussed a "ramp down" of its high-waisted Zamora and Yola styles to pursue new waistband styles. (*Id.*) Later, on FIGS's March 8, 2022 earnings call, Spear allegedly misled investors when she affirmed FIGS's core product strategy, despite knowing FIGS would "ramp down" the Zamora and Yola styles, which are core franchise

1    product lines.  (*Id.*)  Then, on FIGS's May 12, 2022 earnings call, Exchange Act
2    Defendants allegedly misrepresented that the lack of Zamora and Yola stock was
3    attributed to supply chain challenges.  (*Id.*)

4         After reviewing the March and May 2022 earnings call transcripts, the Court
5    finds the identified statements are not clearly inconsistent.  In the March 8, 2022
6    earnings call, Spear stated that reliance on core styles "enables [FIGS] to produce
7    large volumes further in advance and hold greater quantities in [FIGS's] warehouses."
8    (Speers Decl. Ex. K 6.[7])  The "ramp down" statement from FIGS's March 7, 2022
9    board meeting does not contradict Spear's statement about FIGS's ability to produce
10   large volumes of its core styles.  The March 8, 2022 earnings call also reveals that the
11   high-waisted version is only one iteration of the Zamora product.  (*Id.* at 5.)  As such,
12   the ramp down of the high-waisted Zamora product, which is just one type of a core
13   product franchise line, does not contradict Exchange Act Defendants' statement
14   affirming its core product strategy.  Moreover, on the May 12, 2022 earnings call,
15   Turenshine accurately disclosed that FIGS transitioned its high-waisted Zamora and
16   Yola styles to a new yoga waistband.  (Speers Decl. Ex. M 7.)  The "ramp down"
17   statement does not contradict this disclosure.

18        The March and May 2022 statements are not contradictory and do not make a
19   cogent or compelling inference of scienter.  *Tellabs*, 551 U.S. at 314 (holding that a
20   strong inference of scienter under 15 U.S.C. § 78u-4(b)(2)(A) "must be more than
21   merely plausible or reasonable—it must be cogent and at least as compelling as any
22   opposing inference of nonfraudulent intent").  Accordingly, the Court does not find a
23   strong inference of scienter based on the March 7, 2022 and May 10, 2022 board
24   meetings.

25

26

27

28   ---------
[7] For all earnings call exhibits, (*see* Speers Decl. Exs. K, M), the Court cites the pagination in gray text on the bottom right of each page.

5. *Holistic Evaluation of Scienter*

Considering Plaintiffs' FAC allegations as a whole, the Court finds Plaintiffs fail to plead a holistic inference of scienter with respect to FIGS, Hasson, Spear, and Turenshine.

Accordingly, the Court **GRANTS** Exchange Act Defendants' Motions and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 10(b) cause of action.

**D.   Violation of Section 20(a) of the Exchange Act**

Plaintiffs assert their fifth and final cause of action against Hasson, Spear, Turenshine, Willhite, and Tulco for control person liability under Section 20(a). FIGS and Tulco move to dismiss Plaintiffs Section 20(a) claim for failure to plead a primary violation under Section 10(b) and for failure to plead that Tulco is a control person. (FIGS MTD 34; Tulco MTD 13–14.)

A claim under Section 20(a) is dependent on a primary violation of Section 10(b) of the Exchange Act or Rule 10b-5.  *See Zucco*, 552 F.3d at 990 (holding the existence of a primary violation under section 10(b) is a prerequisite for control person liability under section 20(a)); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062 (9th Cir. 2014) ("[A plaintiff] must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator."). Here, as explained above, Plaintiffs fail to adequately plead scienter and therefore have not adequately stated a Section 10(b) or Rule 10b-5 violation. As such, Plaintiffs fail to plead a primary violation that could support a Section 20(a) cause of action against Hasson, Spear, Turenshine, Willhite, and Tulco.

Accordingly, the Court **GRANTS** FIGS's and Tulco's Motions and **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' Section 20(a) cause of action.

## VI.   LEAVE TO AMEND

Generally, a court should freely grant leave to amend a dismissed complaint. *See* Fed. R. Civ. P. 15(a).  This is particularly true in the context of the PSLRA,

because "an unprecedented degree of specificity is required" and "the drafting of a cognizable complaint can be a matter of trial and error." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The Court has previously granted Plaintiffs leave to amend, and will do so once more here as specifically described above, because Plaintiffs' allegations come within the PSLRA.

However, Plaintiffs are cautioned that the disorganized, prolix nature of Plaintiffs' FAC is an additional basis for dismissal.  "Neither courts nor defendants should have to wade through the morass of 'puzzle pleadings' as this wastes judicial resources and undermines the requisite notice for a defendant to respond." *In re New Century*, 588 F. Supp. 2d 1206, 1218–19 (C.D. Cal. 2008).  Dismissal is appropriate when, as here, "[t]he inconsistent use of emphasis, use of cross-references, and failure to delineate the reasons why statements were false and misleading presented in the [complaint] require the [c]ourt to parse through statements to discover which are false and misleading." *Jiangchen v. Rentech, Inc.*, No.2:17-cv-01490-GW (FFMx), 2017 WL 10363990, at *8 (C.D. Cal. Nov. 20, 2017).  Here, Plaintiffs' 164-page pleading requires extensive judicial resources to decipher which portions of lengthy statements Plaintiffs allege to be false.  Furthermore, the pleadings are highly repetitive, often in a way that contributes ambiguity and uncertainty to the pleading.

It is the plaintiff's "responsibility to craft a clear and concise complaint." *In re New Century*, 588 F. Supp. 2d at 1219.  Merely adding allegations to this already byzantine pleading is unlikely to convince the Court that Plaintiffs are able to state a plausible claim.  Plaintiffs should take this opportunity to amend the pleading by reducing repetitions and ambiguity.  Accordingly, the Court will take a jaundiced view of any amended pleading that is lengthier than the FAC, and will be inclined to strike an amended pleading that perpetuates this prolixity, preventing meaningful analysis of the claims.

## VII.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss.  (ECF Nos. 118, 120, 123.) Specifically, the Court hereby:

- **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiffs Hoch's, City of Pensacola's, and Kissimmee's Section 11 claims based on the SPO, and Section 12(a)(2) claims;

- **DISMISSES WITH PREJUDICE** Plaintiffs' Section 11 claim based on FIGS's statement about its air freight use in 2020 and March 2021, (FAC ¶ 154);

- **DISMISSES WITH LEAVE TO AMEND** Plaintiff City of Warren's Section 11 claim based on the SPO; and

- **DISMISSES WITH LEAVE TO AMEND** Plaintiffs' remaining claims under Section 11, Section 12(a)(2), Section 15, Section 10(b), and Section 20(a) as described above.

If Plaintiffs choose to amend, the Second Amended Class Action Complaint is due no later than **twenty-one (21) days** from the date of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing. If Plaintiffs do not timely amend, this dismissal shall be deemed a dismissal with prejudice as to the dismissed claims.

**IT IS SO ORDERED.**

January 10, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**